STOULIG, Judge.
Plaintiff, Louise B. Perrere, filed suit claiming she was entitled both to damages under C.C. art. 2315 and workmen’s compensation benefits for an injury she incurred on February 23, 1970 when an elevator door suddenly closed and struck her arm as she was leaving her job. Named defendants are her then employer, Bank of New Orleans and Trust Company, and its compensation insurer, Employers Liability Assurance Corporation; and Louisiana Elevator Corporation, which performed exclusive maintenance service on the elevator, and its liability insurer, The Travelers Insurance Company. The compensation *712 insurer intervened in the tort suit seeking reimbursement from the negligence action defendants for the compensation it had paid or might be condemned to pay.[1]
After trial on the merits, judgment was rendered dismissing plaintiff’s tort action and the intervention and awarding plaintiff workmen’s compensation benefits of $28.-40[2] per week from March 1970 to May 10, 1973 and $822.40 medical payments. Only the defendant employer has appealed.
The questions before us are (1) whether the plaintiff established her claim of disability by a preponderance of the medical evidence; and (2) the extent of liability of Louisiana Elevator Corporation and its liability insurer.
Unquestionably Mrs. Perrere was hit on the right arm by a closing elevator door as she was leaving the Bank of New Orleans after completing her duties as a key punch operator. Admittedly she incurred a bicip-ital tendonitis (inflammation of the upper right arm tendon) as a result of the trauma. At issue is the length of time this condition was disabling. Appellant contends the after effects of the blow subsided within several months of the incident, while plaintiff claimed she still suffered with this disabling condition when this matter was tried some five years after the accident.
The chronology of medical treatment is as follows:
March 16, 1970 — Dr. Pierre Espenan of Houston, Roy and Faust examined plaintiff, recorded a history of this accident, injected the area with a steroid to relieve pain, and began plaintiff on a course of diathermy.
March 25, 1970 — Dr. Richard Faust first saw plaintiff, reviewed history written by his associate Dr. Espenan, testified his findings supported complaints of bicipital tendonitis, prescribed pain medication and injection, and ordered the diathermy continued.
April 6, 1970 — Dr. Faust writes report indicating the condition should subside in several weeks.
April 24, 1970 — Plaintiff appeared at Dr. Faust’s office and claimed she was having too much pain to submit to treatment. At that time she cancelled an appointment for diathermy for April 27, 1970 and never returned. The doctor notes she “deserted” treatment on April 24, 1970. By registered letter, this medical office requested that she come in for further evaluation and she never did respond although a receipt signed by plaintiff indicates she received the letter.
April 28, 1970 — Plaintiff contacted her own physician, Dr. Lloyd LoCascio, a general practitioner, who testified that she developed bicipital tendonitis as a result of the blow by the elevator door which, while improved within the five years he had been seeing her, still left her in a disabled condition. During the course of this treatment, Dr. LoCascio referred plaintiff to Dr. George Batta-lora, an orthopedic specialist, and later to Dr. S. J. LeCoco, also an orthopedic surgeon. (The court was not given the benefit of their evaluation because plaintiff, without explanation, failed to call either as a witness.)
April 11, 1973 — Plaintiff, a full-time employee of Pan American Life Insurance Company for many years, had a serious fall on the job that required extensive hospitalization. In this accident she received a hard blow to the right arm and shoulder. (We note here Mrs. Per-rere was a key punch supervisor and this job did not require her to operate the key punch machine.)
*713 Mrs. Perrere relies solely on the medical testimony of Dr. LoCascio to prove her claim of disability as a result of the elevator incident. His testimony is not impressive. There is no explanation why plaintiff failed to call the specialists to whom Dr. LoCascio referred her for orthopedic evaluation of the specific problem she claims is disabling.
Defendants called Dr. Faust, whose last prognosis was that the plaintiff’s injury would subside without residual disability in the immediate future. Dr. Claude Williams, an orthopedic specialist, examined plaintiff on April 16, 1970, evaluated her injury as minor, recommended she continue treatment with Dr. Faust, and predicted the problem would be completely alleviated in one month.
In weighing the respective medical testimony, the trial judge commented:
“Dr. LoCascio gave the Court the distinct impression of one who was personally opposed to the cross-examining attorney. He took offense at being questioned on cross-examination; he was an argumentative, adamant witness and his general demeanor on cross-examination was one of pertness, pert to the point of being rude and offensive. As regards this plaintiff’s shoulder injury in the elevator-door accident, the court gives far greater weight to the testimony of Dr. Faust and Dr. Williams.”
We conclude the medical evidence does not sustain Mrs. Perrere’s claim of disability beyond May 16, 1970. In referring plaintiff to two orthopedic specialists for treatment, Dr. LoCascio has tacitly acknowledged the need for more specialized evaluation and/or treatment. Plaintiff’s failure to call either as a witness without explaining their absence creates a presumption their testimony would be adverse to her claim.[3] Then if we apply the general rule of evidence that the specialist’s testimony is given more weight than that of the general practitioner because the specialization presupposes he is more knowledgeable in the field,[4] this further weakens plaintiff’s case.
Although the procedural rules of evidence are relaxed in presenting a claim for workmen’s compensation, the plaintiff is still required to establish her case by a preponderance of the evidence. Plaintiff’s case rests on the testimony of Dr. Lo-Cascio whom the trial judge found hostile. Even though the trial judge’s written reasons stated he was more impressed with defendants’ medical witnesses, he resolved the question of disability in plaintiff’s favor. We would affirm this finding if we did not have to consider plaintiff’s unexplained failure to call the orthopedic specialists she consulted. Thus when we weigh this adverse presumption with the testimony as a whole, we conclude plaintiff has failed to prove disability beyond May 16, 1970.
We use this date (May 16, 1970) because one month prior Dr. Williams projected her disability would end in this period of time. Because plaintiff “deserted” Dr. Faust’s treatment on April 24, 1970 and failed to respond to further inquiry from that office, there is no definitive way of pinpointing the date she was no longer disabled from this accident.
Appellant next contends it is entitled to reimbursement from Louisiana Elevator Corporation and its insurer. We dismiss this claim because we conclude there is no showing of negligent maintenance by this defendant. Its records reflect it had no reports of problems with the elevator within three months before or three months after the accident. Routine maintenance required bimonthly inspection. Appellant suggests we apply the rule of res *714 ipsa loquitur to shift the burden of proof to Louisiana Elevator Corporation. This rule is inapplicable because plaintiff did not prove that improper maintenance was the most plausible explanation for the incident to the exclusion of any other probable cause.[5]
For the reasons assigned, the judgment appealed from is amended as it affects the Bank of New Orleans and Trust Company to reduce the award of workmen’s compensation and to decree benefits of $28.40 per week due from the date of the accident through May 16, 1970. The judgment awarding plaintiff $822.40 in medical payments is reversed. The judgment dismissing the petition of intervention is affirmed. Costs of this appeal are to be borne by the Bank of New Orleans and Trust Company.

AMENDED IN PART; REVERSED IN PART; AFFIRMED IN PART.

. L.R.S. 23:1101.

. Plaintiff supplemented her income with a part-time job at the Bank of New Orleans as a key punch operator two nights per week.

. Richard v. Guillot, 271 So.2d 719 (La.App. 1st Cir. 1972).

. Brown v. Employers Commercial Union Insurance Co., 316 So.2d 194 (La.App. 4th Cir. 1975).

. Boudreaux v. American Insurance Company, 262 La. 721, 264 So.2d 621 (1972).