539 So.2d 937 (1989)
June ROSELL
v.
ESCO, D/B/A Jolly Elevator Corp., et al.
No. 88-CA-0661.
Court of Appeal of Louisiana, Fourth Circuit.
February 16, 1989.
Writ Granted April 21, 1989.
*938 Ivan David Warner, III, Clyde A. Ramirez, Patricia D. Miskewicz, Ramirez, Warner and Miskewicz, New Orleans, for plaintiff/appellee, June Rosell.
John E. McAuliffe, Jr., Bienvenu, Foster, Ryan and O'Bannon, New Orleans, for defendant/appellant, Raftery Elevator Corp.
Before LOBRANO and ARMSTRONG, JJ., and HUFFT, J. Pro Tem.
PRESTON H. HUFFT, Judge Pro Tem.
June Rosell, plaintiff and appellee, apparently sustained injuries as a result of a collision of the right side of her face and forehead with the doors of an elevator maintained by Raftery Elevator Corporation, defendant and appellant. Plaintiff brought suit against the elevator's manufacturer, Esco, d/b/a Jolly Elevator, and service contractor, Raftery Elevator Corporation. The trial court dismissed Esco pursuant to a motion for summary judgment. The court conducted a trial by jury with respect to the claim against Raftery. The jury found in favor of the plaintiff, determined her damages to be $500,000.00, and found her 30% comparatively negligent and reduced her recovery amount to $350,000.00. Raftery appeals from the trial court's decision and has assigned numerous specifications of error. Ms. Rosell has disputed the finding of her comparative negligence in her answer to the appeal.
On January 12, 1984, June Rosell apparently injured her head and neck while exiting an elevator on the first floor of the offices of Colonial Bank, her employer at the time. The injuries apparently resulted from a collision of Ms. Rosell's face and forehead with the elevator doors. Witnesses for the plaintiff claimed to have experienced prior difficulties with the elevator doors closing too fast. The defense impeached much of that testimony by reference to contradictory statements made in the respective depositions taken from those witnesses. Many of these witnesses had also indicated that they had informally communicated these problems to bank supervisors whom they assumed were aware of the problem. However, the bank supervisors testified that they did not receive any complaints nor were they aware of any problem concerning the closing of the applicable elevator doors.
One bank employee testified that she routinely called the defendant about the elevator doors at the direction and with the knowledge of her supervisor, Mary Brown. Ms. Brown, one of the bank supervisors who testified, stated that she never received any complaint nor made any instruction to call Raftery to correct a problem with the elevator doors. The same employee claimed that she frequently and routinely called Raftery's female receptionist about the elevator doors. However, the person who routinely answers the phone at Raftery is a man who is responsible for keeping a log of all service calls and making all dispatch assignments. The gentleman never received any call, as reflected by his log and his recollection, concerning a problem with the closing of the elevator doors at Colonial Bank.
The defendant presented expert testimony that the applicable elevator doors would have closed too fast if the timer had been set for the doors to close quickly, a problem which could be easily corrected by a routine maintenance adjustment. The defendant presented testimony that the regular monthly maintenance inspections entail a physical observation of the doors closing and that the routine inspection just prior to the accident led the service man to conclude that the doors closed within an acceptable, reasonable time span of twelve seconds. No one who testified stated that a problem existed with the doors closing too fast in the days or hours immediately before or immediately after the accident. The testimony also established that the doors would close routinely, regularly, and mechanically according to the timing setting. Absent a second possible cause, to be addressed next, the doors would not vary in the amount of time taken to close. A second possible mechanical cause for the alleged problem would be attributable to an open shunt field in the motor that opens *939 and closes the elevator doors, in which case the doors would continually open and close. The record reflects no such problem manifested by the elevator doors. The plaintiffs did not present any expert testimony as to whether the doors could suddenly close as an aberration.
The only people present at the accident were the plaintiff and Ms. Dawn Hirstius, another bank employee. The plaintiff testified that when the accident occurred she had followed Ms. Hirstius out of the elevator when it reached the ground floor, that they had not been engaged in conversation, that the elevator door had closed as she had one foot in and one out of the elevator, and that the force of the blow from the door had caused her to fall back and hit the rear wall of the elevator. Ms. Hirstius contradicted much of plaintiff's testimony by testifying that they had been engaged in conversation and that the plaintiff had preceded her in exiting the elevator. Ms. Hirstius did not see the door strike Ms. Rosell but testified that the plaintiff had reacted as though she had been hurt in the face. Ms. Hirstius could not see plaintiff's face because plaintiff held it as though she were in pain. Ms. Hirstius clearly testified that Ms. Rosell did not fall back into the elevator and hit the rear wall in reaction to the apparent blow.
The trial court admitted into evidence certain testimony, alleged by the defendant to be hearsay and not properly admissible, concerning the plaintiff's claims of suffering from epileptic seizures as a result of the accident. Defendant also contested the admission of certain testimony by a treating physician as to the findings of a consulting psychologist concerning the effect of the accident upon plaintiff's mental condition.
The damages awarded by the jury appear to comprise, in globo, general damages for pain and suffering and for lost wages. The plaintiff claims to suffer from epileptic seizures that she attributes to the accident and which appear to preclude her from re-entering the work force.
The defendant has assigned numerous specifications of error, including manifest error in finding defendant negligent and liable, error in admission of certain hearsay testimony, and error in assigning too low a percentage of comparative negligence to plaintiff.
After carefully reviewing the record, we cannot find that plaintiff sustained the burden of proof of establishing negligence by the defendant. The plaintiff's case rests upon the dubious testimony of certain employees who claimed to have witnessed past problems with the elevator doors closing too fast. Defendant managed to contradict much of what plaintiff's witnesses had to say either with their own words or by reference to what they alleged to be corroborating evidenceknowledge and actions of the bank supervisors. The expert witnesses for the defendant provided uncontradicted testimony that the elevator doors could not have closed suddenly as an isolated incident but had to manifest the same type of allegedly sudden closing immediately prior to and after the accident. If a mechanical problem had existed, the doors would have closed too quickly every time the doors closed before and after the accident. The record shows that no one noticed the doors closing too fast in the days and hours immediately preceding and following the accident. The plaintiff failed to show that such an aberration could have happened, much less did happen. With the respect to the accident itself, much of what plaintiff had to say was contradicted by the only unbiased witness present at the time of the accident, Ms. Hirstius. While there is little doubt that Ms. Rosell sustained an injury, much doubt exists as to how the doors could have possibly closed too fast and caused the accident.
The appropriate standard for appellate review of the determinations of the trier of fact is that the appellate court should not disturb the findings absent manifest error, which means that the finding is clearly wrong. Canter v. Koehring Co., 283 So.2d 716, 724 (La.1973), and Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
The plaintiff had to prove negligence on the part of the service contractor. Wilson v. Hibernia National Bank, 517 *940 So.2d 1206 (La.App. 4th 1987), writ denied, 520 So.2d 425 (La.1988), Leaber v. Jolley Elevator Corp., 354 So.2d 746 (La.App. 4th Cir.1978), writ denied, 356 So.2d 1004 and 1010 (La.1978); Perrere v. Bank of New Orleans and Trust Company, 334 So.2d 710 (La.App. 4th Cir.1976); Hester v. Montgomery Elevator Co., 392 So.2d 155 (La. App. 1st Cir.1980); Funderburk v. Montgomery Elevator Co., 358 So.2d 993 (La. App. 1st Cir.1978). The record clearly shows no proof of negligence by defendant. Since the defendant cannot be held strictly liable, Wilson, supra, we must necessarily conclude that the jury's decision constitutes manifest error and therefore we must reverse.
While the defendant has raised a number of other issues to contest the decision of the trial court, our ruling on the essential issue renders moot the necessity for us to address the other matters raised by the defendant.
For the foregoing reasons, we reverse the decision of the trial court and find in favor of the defendant and against plaintiff; we find that the defendant Raftery Elevator Corporation was not negligent in servicing the elevator at Colonial Bank and that the defendant, therefore, has no liability for whatever damages the plaintiff sustained. Costs assessed to plaintiff/appellee.
REVERSED.