549 So.2d 840 (1989)
June ROSELL
v.
ESCO, d/b/a Jolly Elevator Corp., et al.
No. 89-C-0607.
Supreme Court of Louisiana.
September 12, 1989.
*842 Samuel C. Gainsburgh and Nick F. Noriea, Jr., Gainsburgh, Benjamin, Fallon, David & Ates, New Orleans, for applicant.
John E. McAuliffe, Jr., Bienvenu, Foster, Ryan & O'Bannon, New Orleans, for respondent.
DENNIS, Justice.
This case presents the question whether the factual finding by a jury that an elevator maintenance firm caused damage to an elevator passenger by its negligence was manifestly erroneous or clearly wrong. The Court of Appeal concluded that there was such readily perceived error and reversed. Rosell v. ESCO, 539 So.2d 937 (La.App. 4th Cir.1989). Because our reading of the record convinces us that the Court of Appeal misapplied the manifest errorclearly wrong standard, we reverse.

1.
This case arises out of an accident which befell June Rosell on January 12, 1984 as she was exiting a two-story elevator at the place of business of her employer, the Colonial Bank. Shortly before Ms. Rosell's accident, another person had become trapped in a different, five-story elevator in the bank. In response to a distress signal, Ms. Rosell took the two-story elevator up to the second floor to find help. Unable to do so, Ms. Rosell took the same elevator down to the first floor. Another bank employee, Ms. Dawn Hirstius, was in the elevator with Ms. Rosell. When the elevator reached the first floor, Ms. Rosell attempted to exit, but the doors closed colliding with her head, neck and facial area. Because of resulting injuries, Ms. Rosell filed a personal injury suit against ESCO, d/b/a Jolly Elevator Corporation, the elevator's manufacturer, and Raftery Elevator Corporation, the elevator's service contractor. ESCO was dismissed by the trial court pursuant to its motion for summary judgment, leaving Raftery as the sole defendant.
After a trial on the merits, the jury returned a verdict in favor of the plaintiff. The jury verdict consisted of answers to four interrogatories: 1) Was there negligence on the part of the defendant Raftery, constituting a proximate cause of plaintiff's injuries?; 2) Was the plaintiff guilty of negligence, constituting a proximate cause of her injuries?; 3) What percentage of fault should be assigned to plaintiff?; and 4) What amount of damages should be awarded? The jury answered interrogatories *843 number one and two in the affirmative, assigning 30% fault to plaintiff under number three. As to the fourth interrogatory, the jury assessed plaintiff's damages at $500,000.00. The trial judge thereafter rendered judgment in favor of plaintiff ordering defendant to pay plaintiff $350,000.00 in damages.
The jury evidently concluded that the accident had been caused by the negligent or improper maintenance of the elevator by Raftery's service personnel. This inference undoubtedly was based on the jury's decision to credit the testimony of the plaintiff's witnesses that the elevator doors operated erratically and too rapidly at times prior to the accident, that this condition was called to Raftery's attention, and that Raftery's employees responded to the complaints but always failed to correct the problem. From these facts the jury apparently inferred that the elevator doors were in a defective condition that should have been discovered and remedied by a reasonable person acting as a professional elevator maintenance firm.[1]
The Fourth Circuit Court of Appeal reversed, holding that the jury erred manifestly or was clearly wrong in finding Raftery guilty of any negligence that caused the accident. Rosell v. ESCO, 539 So.2d 937 (La.App. 4th Cir.1989). The court noted that the jury's evident finding that the elevator doors had been operating erratically before the accident was based upon the testimony of several former Colonial Bank employees, but the court rejected their testimony as "dubious" because it was contradicted by "their own words" and the testimony of defendant's witnesses. The court found instead that the defendant's expert witnesses "provided uncontradicted testimony that the elevator doors could not have closed suddenly as an isolated incident but [would have] had to manifest ... sudden closing immediately prior to and after the accident" and that the record shows that "no one noticed the doors closing too fast in the days immediately preceding or following the accident." The court further found that "[w]hile there is little doubt that Ms. Rosell sustained an injury, much doubt exists as to how the doors could have possibly closed too fast" because plaintiff's testimony "was contradicted by the only unbiased witness present at the time of the accident, Ms. Hirstius," although the court acknowledged that Ms. Hirstius' testimony differed with the plaintiff's only with respect to whether the two were engaged in conversation at the time of the accident, whether Ms. Hirstius preceded the plaintiff in exiting the elevator, and whether the force of the blow caused the plaintiff to fall back into the rear elevator wall.

2.
Thus, the Court of Appeal assigned factual rather than legal grounds for its reversal of the jury verdict and the district court judgment, concluding that the record did not adequately support either of two crucial factual predicates for the jury's findings, viz., that the elevator doors closed too rapidly and struck plaintiff in the head; *844 and that the elevator doors had been operating in a faulty manner prior to the accident. The Court of Appeal identified the standard it applied to the jury's factual findings as the "manifest error" or "clearly wrong" standard. Although the meaning of these phrases is not immediately apparent, certain general principles governing the exercise of the appellate court's power to reverse findings of a trial court or jury may be derived from the cases.
It is well settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong," and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1978); Canter v. Koehring, 283 So.2d 716, 724 (La.1973). See also, Sevier v. United States Fidelity & Guaranty Co., 497 So.2d 1380, 1383 (La.1986); West v. Bayou Vista Manor, Inc., 371 So.2d 1146, 1150 (La.1979); Davis v. Owen, 368 So.2d 1052, 1056 (La.1979); Cadiere v. West Gibson Products Co., 364 So.2d 998, 999 (La.1978); A. Tate, "Manifest Error" Further observations on appellate review of facts in Louisiana civil cases, 22 La.L.Rev. 605, 611 (1962). The appellate review of fact is not completed by reading only so much of the record as will reveal a reasonable factual basis for the finding in the trial court, but if the trial court or jury findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Arceneaux, supra at 1333, Watson v. State Farm Fire & Casualty Ins. Co., 469 So.2d 967 (La. 1985). In applying the manifestly erroneousclearly wrong standard to the findings below, appellate courts must constantly have in mind that their initial review function is not to decide factual issues de novo.[2] See, F. Maraist, The Work of the Louisiana Appellate Courts for the 1978-1979 TermA Faculty Symposium, Civil Procedure, 40 La.L.Rev. 761, 764 (1980); Comment, Appellate Review of Facts in Louisiana Civil Cases, 21 La.L.Rev. 402, 412 (1961); Cf. Anderson v. City of Bessemer City, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985); Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969).
When findings are based on determinations regarding the credibility of witnesses, the manifest errorclearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Canter, supra at 724; Virgil v. American Guarantee & Liability Ins. Co., 507 So.2d 825, 826 (La. 1987); Boulos v. Morrison, 503 So.2d 1, 3 (La.1987); Williams v. Keystone General Contractors, Inc., 488 So.2d 999, 1001 (La. 1986); Johnson v. Insurance Co. of North America, 454 So.2d 1113, 1117 (La.1984); Berry v. Livingston Roofing Co., 403 So.2d 1247, 1249 (La.1981); Crump v. Hartford Accident & Indemnity Co., 367 So.2d 300, 301 (La.1979). Where documents or objective evidence so contradict *845 the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. See, Wilson v. Jacobs, 438 So.2d 1119 (La. App. 2d Cir.1982), writ denied, 443 So.2d 586 (La.1983). Cf. State v. Mussall, 523 So.2d 1305 (La.1988); Anderson v. City of Bessemer City, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985); U.S. v. U.S. Gypsum Co., 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948). But where such factors are not present, and a factfinder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong. See, Jackson v. Tate, 428 So.2d 882, 884 (La.App. 1st Cir.1983), citing McDonald v. Book, 215 So.2d 394 (La.App. 3d Cir.1968), overuled on other grounds, Celestine v. Hub City Motors, Inc., 327 So.2d 700 (La.App. 3d Cir.1976). Cf. Anderson, supra, at 575, 105 S.Ct. at 1512; Schexnider v. McDermott International Inc., 868 F.2d 717, 720 (5th Cir.1989); Employers Ins. of Wausau v. Suwannee River Spa Lines, Inc., 866 F.2d 752, 770 (5th Cir.1989); U.S. v. Hibernia National Bank, 841 F.2d 592, 595 (5th Cir.1988); Hanson v. Veterans Administration, 800 F.2d 1381, 1388 (5th Cir.1986).

3.
After considering the record viewed in its entirety in the present case, we conclude that the Court of Appeal failed to apply the appellate review standard properly.

A.
The first factual finding rejected by the Court of Appeal was the jury's evident conclusion that the elevator doors had been operating erratically, sometimes closing too rapidly, prior to the accident. The Court of Appeal did acknowledge that the record contained testimony by "certain [former] employees who claimed to have witnessed past problems with the elevator doors closing too fast," but found their testimony "dubious" because "much of that testimony" was impeached by "contradictory statements made in ... depositions" or "with their own words" and conflicted with testimony of other Colonial employees and with that of Raftery's "uncontradicted" experts.
We cannot agree that the jury's evident finding that the elevator doors had malfunctioned repeatedly prior to the accident was manifestly or clearly wrong. From our review of the record we find no reason why the jury could not reasonably credit the testimony of the plaintiff's witnesses and reject the testimony of the defendant's witnesses with respect to this question of fact.
No less than five persons who were bank employees at the time of the accident testified that they had noticed problems with the elevator doors closing too fast prior to the incident in question. These individuals were disinterested witnesses no longer affiliated with the bank or having a close relationship with the plaintiff. The record does not indicate any reason that they would have been partial to either party. A careful review of their trial testimony reveals no internal inconsistencies. Two of these five witnesses made a statement at trial that was superficially inconsistent with a statement she had made on a pretrial deposition, but these seeming inconsistencies did not render either witness' testimony implausible on its face. Moreover, in each case the witness explained the seeming inconsistency in a manner that could have been found to be satisfactory by a reasonable jury. From our review of the record, far from finding that "the defense impeached much of that testimony" we find that a reasonable factfinder could conclude that it impeached little or none. A summary of the main points of the testimony by plaintiff's witnesses will help to illustrate why we believe the jury acted reasonably in accepting their account of the facts.
Ms. Gwendolyn Morrison, who had worked for Colonial from December, 1981 through 1984, testified that the elevator doors closed too quickly on her quite often, *846 once hitting her in the arm. She added that she reported the problems to Mary Brown, a supervisor at the bank and that she had seen Raftery employees working on the elevator, explaining that Raftery had "to keep coming out to fix it." Another former employee, Lorna Chappuis, worked at Colonial from January, 1982 to October, 1983. She testified that the elevator doors closed very quickly on her, not pausing long enough to let anyone in or out of the opening. She added that other employees were aware of the problem, and some of them received bruises on their arms from the doors closing too fast. Ms. Chappuis also testified to reporting the elevator problems to Mary Brown and to Linda Gilmore, another supervisory bank employee, who in turn gave the complaints to a receptionist to call for service. In addition, Ms Chappuis explained that, "We would complain and Raftery would come out to fix the elevator door, but we never saw any change." Ms. Janny Eugene, who worked as a teller and in the loan department from 1981 to January, 1984, was asked whether she had had any problems with the elevator doors closing too fast. She responded, "Yes, all the time." She added that most elevators stayed open long enough for a person to enter and exit, but this elevator would make a "jerk" and "hurry up" and close, bumping her on the arm on occasion. Ms. Eugene also indicated that she had complained to Linda Gilmore about the elevator problems. Ms. Joyce Taylor was a switchboard operator/receptionist at Colonial for four and a half years from January, 1981 to 1985. She testified that she had noticed the elevator doors closing too quickly, and that it would get stuck quite often. She stated that at times she waited for the elevator doors to open, but before she could step in, "it [the elevator doors] would hurry up and slap back." As switchboard operator at Colonial, Ms. Taylor testified that she often called service repairmen, because she could do it faster than anyone else. She testified: "I would call them at least six or seven times a month. I would call Raftery Elevator Company to come out because the door is closing fast or it was stuck. All kinds of things it was doing." Finally, Michael Tabb, a former bank employee and resident of the state of California travelled to Louisiana to testify. When asked whether he had experienced any problems with the elevator while employed by the bank, he testified that the elevator closed too fast, "basically everytime you got on the elevator." Mr. Tabb also testified to reporting the problem to Mary Brown and Ms. Gilmore.
The trial testimony of each of these five witnesses was internally consistent and plausible on its face. Although two had made a superficially inconsistent prior statement during a deposition, the apparently incompatible elements were either explained plausibly by the witness or were not so seriously inconsistent as to make the witnesses' testimony incredible to a reasonable fact finder. Ms. Morrison stated in her deposition that she had not made any personal complaints about the elevator. At trial she testified that she had complained to Mary Brown about the elevator. When asked about this inconsistency she explained that she meant on her deposition that she had never made any complaints about the elevator for herself. When asked during her deposition if she had made "formal complaints" about the elevator to her supervisors, Lorna Chappuis responded "No." At trial she testified that she did complain to several supervisors, and defense counsel then impeached her with the prior deposition statement. Ms. Chappuis explained that she did complain to people, but she reacted as though she did not believe the complaints to be "formal." Ms. Chappuis was also confronted with her deposition testimony that Ms. Rosell had told her that she [Ms. Rosell] was bending over to help someone injured in the elevator when the elevator doors struck her. Ms. Chappuis explained that her deposition testimony was incorrect because she had misunderstood what Ms. Rosell said at that time and had mistakenly concluded that Ms. Rosell had been helping an injured person when the accident occurred. These are the only statements in the witnesses' depositions that might be viewed as being inconsistent with their trial testimony. We *847 think the jury reasonably could have found that the witnesses' explanations adequately resolved any seeming inconsistency, or, if not, that the minor discrepancies did not detract from the credibility of the witnesses in other respects. Furthermore, even if the testimony of Ms. Morrison and Ms. Chappuis were disregarded entirely, the testimony of the other three former bank employees, in the light of the entirety of the record, afforded an adequate basis for the jury to have found reasonably that the elevator had malfunctioned repeatedly prior to the accident.
The Court of Appeal evidently discredited the testimony of Ms. Taylor, the receptionist/switchboard operator for the additional reason that a male employee of Raftery testified that he routinely answered the company's phone, that he could not recall complaints about the elevator doors, and that his log contained no entry of such a problem. Ms. Taylor had testified that when she called Raftery to report the elevator problems she usually spoke to a female employee. Nevertheless, the jury permissibly could have chosen to believe that Ms. Taylor's testimony was more credible or reliable. Indeed, the jury might well have considered her testimony and that of the other former bank employees, who said they witnessed and suffered from the elevator's erratic behavior, more persuasive than the after-the-fact failure of the elevator company's employee to recall or find a record of phone calls that would have been received over three years prior to the trial.
The appellate court concluded that "[n]o one who testified stated that a problem existed with the doors closing too fast in the days and hours immediately before or immediately after the accident." This statement implies that the testimony of the five former bank employees as to the elevator's defective condition clearly did not relate to the time immediately before the accident. However, the trial counsel did not elicit from any of these witnesses the exact or approximate dates or times upon which he or she observed the elevator doors malfunctioning. One reasonable inference that the jury could have drawn, and apparently did draw, from the evidence was that the elevator doors operated erratically on numerous occasions over a period of time up to and including the date of the accident. The Court of Appeal plainly substituted its own evaluation of the record for reasonable inferences of fact made by the jury.
Further, we do not agree with the Court of Appeal's conclusion that the elevator company's expert witnesses were "uncontradicted" or that the jury was unreasonable in rejecting their opinion that the elevator doors, if they were in a defective condition, could not have closed suddenly on isolated occasions or at irregular intervals as reported by the bank employees, but would have had to open and close continually without interruption. The defendant's expert witnesses' opinions were clearly contradicted by the testimony of the plaintiff and the five former bank employees who testified that the doors closed on them and others too rapidly and unexpectedly. Besides, Raftery's expert witnesses were all full time service personnel of the defendant elevator maintenance company. Consequently, it was within the jury's discretion as factfinder to credit the former bank employees' statements over the potentially self-interested testimony of the elevator company's service employees. Indeed, the conflict in the testimony is so manifest in the record, and the jury's discretion to make reasonable evaluations of credibility is so well established in law, that the Court of Appeal's failure to defer to the jury's findings is difficult to fathom.
For the same reasons, the jury's finding based on its decision to credit the testimony of the five former bank employees over that of the supervisory employees cannot be regarded as clearly wrong or manifestly erroneous. Several supervisory employees, who were still employed by the bank at the time of the trial, testified that they knew of no complaints or problems with the elevator prior to the accident. The jury reasonably could have found that because the plaintiff's witnesses were no longer with the bank that their testimony was more disinterested than any other testimony. *848 The jury reasonably could have found that the bank supervisors, concerned about the bank's and their own exposure to liability from elevator accidents, may have believed it to be in their own self interest to deny knowledge of malfunctions of the elevator.[3] The Court of Appeal simply failed to give due regard to the ability of the jury to interpret and discern the credibility of oral testimony.

B.
The second factual determination rejected by the Court of Appeal was the jury's evident finding that the accident happened essentially as the plaintiff claimed viz., by virtue of elevator doors closing with extreme rapidity so that they caught her off guard and violently struck her head. The Court of Appeal found that the testimony of Ms. Hirstius, "the only unbiased witness present at the time of the accident", was more credible and that it completely contradicted the plaintiff's story that the elevator doors closed too fast for her to avoid the accident. In our opinion, the Court of Appeal committed compound error. First, if the Court of Appeal's characterization of Ms. Hirstius as an "unbiased witness" implies that the plaintiff was biased because of her interest, and that the trier of fact could not credit her testimony over a disinterested witness, this was clear error. A jury is not required to disregard testimony merely because the witness may be interested or biased. It is within the province of the trier of fact to place more probative value on the testimony of an interested witness than that of a disinterest one. See, McSweeney v. Department of Transportation & Development, 442 So.2d 659 (La.App. 1st Cir.1983); Fisher v. Walters, 415 So.2d 343 (La.App. 2d Cir.1982), rev'd on other grounds, 428 So.2d 431 (La. 1983); Galloway v. Gaspard, 340 So.2d 579 (La.App. 1st Cir.1976); Dewese v. Hartford Accident & Indemnity Co., 295 So.2d 574 (La.App. 3d Cir.1974), writ refused, 299 So.2d 794 (La.1974); Breaux v. Texas & Pacific Railway Co., 176 So.2d 640 (La. App. 1st Cir.1965), writ refused, 248 La. 375, 178 So.2d 660 (1965). Second, the testimony of Ms. Hirstius does not contradict that of the plaintiff in any fundamental respect. As the Court of Appeal acknowledged, Ms. Hirstius testified that she did not see the doors strike Ms. Rossell but that the plaintiff reacted as though she had been hurt in the face. In fact, the record indicates that Ms. Hirstius testified that she heard Ms. Rosell excitedly utter "Ow" and "The elevator got me." In addition, she also testified that plaintiff was crying and looked as if she was in severe pain. The jury could have reasonably found that Ms. Hirstius' testimony substantially corroborated plaintiff's story. Ms. Hirstius did not controvert Ms. Rosell's testimony that the doors closed with excessive speed or that it struck and injured the plaintiff's head. The fact that the two witnesses differed on some of the less consequential details (whether Ms. Hirstius preceded plaintiff in exiting the elevator, whether the force of the blow caused plaintiff to fall backward into the elevator, and whether the two were engaged in conversation at the time of the accident) does not detract from the jury's ability to credit the plaintiff's story, all or in part. Therefore, we find that the Court of Appeal erred in weighing the testimony and in substituting its judgment for that of the jury. The jury was charged with the responsibility of determining credibility and reasonably could have believed plaintiff's description of the accident, particularly in light of Ms. Hirstius' corroborating testimony concerning plaintiff's reaction immediately upon being struck by the elevator.

4.
Raftery argues that the trial court committed reversible error by instructing *849 the jury that "[i]n this case you would have to find that the defendant was guilty of negligence by not properly maintaining the elevator, that the elevator itself was faulty." Raftery contends that this charge led the jury to believe that liability could be based on defectiveness alone.
As a general rule, the giving of an allegedly erroneous jury instruction will not constitute grounds for reversal unless the instruction is erroneous and the complaining party has been injured or prejudiced thereby. See, Bienvenu v. Angelle, 254 La. 182, 223 So.2d 140 (1969), overuled on different grounds, Gonzales v. Xerox Corp., 320 So.2d 163 (La.1975); Peeples v. Dobson, 99 So.2d 161 (La.App. 2d Cir.1957). Cf. R. Slovenko, Control Over the Jury Verdict in Louisiana Criminal Law, 20 La.L.Rev. 657 (1960). In order to determine if a single sentence of the trial judge's instructions was both erroneous and prejudicial, it must be considered within the context of the whole instruction of which it was an integral part.
The trial judge's jury instruction on negligence provided:
... The Plaintiff in this case alleges that the Defendant, Raftery Elevator Corporation, is guilty of negligence herein and that she suffered damages to her health, injuries to herself and monetary damages because of the negligence on the part of Raftery. In order for you to arrive at a verdict against Raftery Elevator Corporation, you must find negligence on their part in servicing or maintaining the elevator. The mere fact that Raftery was under contract to maintain the elevator is not sufficient to determine negligence.
What do we mean by negligence?
One of the articles in our Civil Code defines negligence as follows, "Every act whatsoever of man that causes damage to another obliges him by whose fault it happens to repair it." And by fault we mean negligence. Negligence is the doing of some act which a reasonably prudent person would not do or the failure to do something that a reasonably prudent person would do when prompted by consideration which ordinarily regulate the conduct of human affairs. It is, in other words, failure to use ordinary care under the circumstances.
In this case you would have to find that the Defendant was guilty of negligence by not properly maintaining the elevator, that the elevator itself was faulty.
When the sentence complained of is read in the context of the entire negligence instruction, it is obvious that it was neither incorrect nor prejudicial. In essence, the trial judge instructed the jury that, to find Raftery guilty of negligence, it must find that the elevator was faulty, that the defendant had not properly maintained the elevator, and that the defendant had not used ordinary care or reasonable prudence under the circumstances. The instruction solidly links the defective condition of the elevator with the defendant's improper maintenance and lack of due care and prudence as essential elements of negligence. The instruction does not, as Raftery contends, inform the jury that it may hold the defendant liable "merely by finding that the elevator was faulty or defective."

5.
In its final assignment of error related to liability, defendant contends that it was manifest error for the jury to find that the negligence of Raftery's employees was the proximate cause of the accident in the face of evidence that Colonial Bank's employees also had done work on the elevator. Assuming, without deciding, that a reasonable inference could have been drawn that the bank employees performed negligent work on the elevator, it was nevertheless also reasonable for the jury to deduce that the employees of Raftery, who were primarily responsible for the elevator maintenance, and who according to substantial evidence worked on the elevator following complaints about its erratic operations, were guilty of negligence proximately causing the accident.

6.
It is this court's well settled rule of practice that in instances where the court of appeal has not had the opportunity, or has *850 found it unnecessary, to review the merits of the controversy under its appellate jurisdiction, it is usually the better practice for this court, when it becomes necessary to set aside a court of appeal's reversal of a trial court judgment, to remand the case to the court of appeal for such review, even though this Court is vested with the power to dispose of the case finally on writ review. Logan v. Louisiana Dock Co., 541 So.2d 182, 192 (La.1989) (On Rehearing) and authorities cited therein. Accordingly, we will reverse the Court of Appeal judgment on the issue of liability and dispose of this question finally, but we will remand the case to the Court of Appeal for it to review the issues of contributory negligence, comparative fault and damages.

Decree
The judgment of the Court of Appeal is reversed and final judgment is entered in favor of plaintiff on the issue of liability. The case is remanded to the Court of Appeal for it to complete its review of the merits of the case consistently with this opinion.
REVERSED; JUDGMENT ON LIABILITY RENDERED; REMANDED TO COURT OF APPEAL WITH INSTRUCTIONS.
NOTES
[1] The trial court instructed the jury that the elevator maintenance firm should be held to the standard of care of a reasonable person in inspecting and servicing the elevator, and the Court of Appeal applied the same standard in its appellate review. This view coincides with a number of authorities within and outside our state. See, Campbell v. Otis Elevator Co., 808 F.2d 429 (5th Cir.1987); Brown v. Otis Elevator Co., 535 So.2d 525 (La.App. 4th Cir.1988); Funderburk v. Montgomery Elevator Co., 358 So.2d 993 (La.App. 1st Cir.1978); Bias v. Montgomery Elevator Co., 216 Kan. 341, 532 P.2d 1053 (1975); Seay v. General Elevator Co., 522 P.2d 1022 (Okla.1974); Otis Elevator Co. v. Wood, 436 S.W.2d 324 (Tex.1968); 65 C.J.S. Negligence § 82. But there is also considerable well reasoned authority for the proposition that an elevator maintenance firm, such as Raftery, should be held to a higher degree of care because an improperly maintained elevator can become a dangerous instrumentality. See, Prosser & Keeton on Torts § 34 (5th ed. 1984); Harper, James and Gray, The Law of Torts, § 16.5 (1986); Otis Elevator Co. v. Seale, 334 F.2d 928 (5th Cir.1964); Norman v. Thomas Emery's Sons, Inc., 7 Ohio App.2d 41, 218 N.E.2d 480 (1966); Ward v. City National Bank & Trust Co., 379 S.W.2d 614 (Mo.1964); Otis Elevator Co. v. Embert, 198 Md. 585, 84 A.2d 876 (1951); Krueger v. North American Creameries, Inc., 75 N.D. 264, 27 N.W.2d 240 (1947). Although we consider the question to be important and res nova in this court, its decision is not necessary in the present case because the jury's findings should have been affirmed under an application of either standard. Accordingly, we pretermit the issue.
[2] The Louisiana Constitution provides that the appellate jurisdiction of a court of appeal extends to law and facts. La. Const.1974, Art. V Sec. 10(B). This provision, resulting from Louisiana's history as a civilian jurisdiction, has been interpreted as giving an appellate court the power to decide factual issues de novo. The exercise of this power is limited, however, by the jurisprudential rule of practice that a trial court's factual finding will not be upset unless it is manifestly erroneous or clearly wrong.

Nevertheless, when the court of appeal finds that a reversible error of law or manifest error of material fact was made in the trial court, it is required to redetermine the facts de novo from the entire record and render a judgment on the merits. Gonzales v. Xerox Corp., 320 So.2d 163 (La.1975). See also, McLean v. Hunter, 495 So.2d 1298 (La.1986); Otto v. State Farm Mut. Ins. Co., 455 So.2d 1175 (La.1984); Ragas v. Argonaut Southwest Ins. Co., 388 So.2d 707 (La. 1980).
[3] Louisiana law places a high degree of care upon elevator/escalator owners, similar to that imposed upon common carriers. See, Campbell v. Otis Elevator Co., 808 F.2d 429 (5th Cir.1987); Otis Elevator Co. v. Seale, 334 F.2d 928 (5th Cir. 1964); Ross v. Sisters of Charity of Incarnate Word, 141 La. 601, 75 So. 425 (1917); Bucket v. Maison Blanche Corp., 379 So.2d 849 (La.App. 4th Cir.1980), vacated, 385 So.2d 782 (La.1980); Wolverton v. City Stores Co., 363 So.2d 1321 (La.App. 4th Cir. 1978).