WOODARD, Judge.
The sole issue of this appeal is whether prescription has run on plaintiff’s legal malpractice suit.
Royal Fiberglass Pools, Inc. (hereinafter plaintiff), through their owners Clifford and Rebecca Hebert, filed a claim for legal malpractice against its attorney, Chester R. Cedars (hereinafter defendant). After answering the petition, defendant filed a peremptory exception of prescription. A hearing was held on the exception in which the trial court sustained the exception. It is from this ruling that plaintiff timely appeals.
After a thorough review of the record and the law, we affirm the judgment of the trial court. The trial court found that the running of prescription commenced in August of 1988 when plaintiff had notice that Mr. Cedars did not file a lawsuit on their behalf against Riberglass, Inc. An appellate court should not disturb the findings of the trier of the fact absent manifest error. Rosell v. Esco, 539 So.2d 937 (La.App. 4 Cir.1989).
Therefore, because we find the trial court was not manifestly erroneous in their finding of when prescription began to run, we affirm its decision and adopt in toto its well written reasons for judgment as our own and include it hereto.
Costs of this appeal are assessed against plaintiff.
AFFIRMED.
APPENDIX
Royal Fiberglass Pools, Inc. vs. Chester R. Cedars, et al.
16th Judicial District Court
Parish of St. Martin
State of Louisiana
Docket No. 47364
REASONS FOR JUDGMENT
This matter came before the Court on June 14, 1991 as a peremptory exception of prescription filed by defendant Chester Cedars. Present for the plaintiff was the attorney of record, Lisa Brener. Present for defendant was his attorney of record, St. Paul Bourgeois. Testimony was pre *283 sented by Clifford and Rebecca Hebert, owners of the plaintiff company Royal Fiberglass. Testimony was also presented by attorney Kenneth W. DeJean.
This action arises out of a claim by Royal Fiberglass that their attorney, Chester Cedars, committed legal malpractice when he failed to file timely a lawsuit on their behalf.
The alleged facts are as follows. Royal Fiberglass is a corporation engaged in the business of manufacturing swimming pools. In late 1985 and the early part of 1986, Clifford and Rebecca Hebert, owners of Royal Fiberglass, noticed a yellowing in their pools which they assert was due to a defective gel coating distributed to them by Riberglass, Inc. In September of 1986, the Heberts met with their attorney Chester Cedars, seeking legal representation. Plaintiffs’ petition claims that the Heberts requested that Mr. Cedars sue Riberglass. Mr. Cedars maintains that this request was not made.
Subsequent to the September 1986 meeting between Mr. Cedars and the Heberts, Mr. Hebert entered into discussions with Riberglass to settle their differences whereby Royal would not sue Riberglass if Riberglass would indemnify Royal for damages. On February 5, 1987, Royal executed a promissory note in favor of Riberglass in connection with monies it allegedly owed, based upon its understanding that Riberglass would indemnify Royal for all of the damages which it sustained as a result of the defective gel coat. Royal made two payments on the promissory note and subsequently stopped. On June 10, 1987 Riberglass filed a lawsuit against Royal on the promissory note.
Mr. Cedars informed the Heberts that the trial on the promissory note was scheduled for August 23, 1988. The Heberts believed that the two lawsuits — the one filed by Riberglass on the promissory note, and Royal’s suit against Riberglass for the defective gel coat — were scheduled for trial together.
In August of 1988 the trial date was continued. Mr. Hebert testified that at this point he had a “gut feeling” that Mr. Cedars had never filed a lawsuit by Royal against Riberglass. He stated that he did not see the filing of the lawsuit in the newspaper as is customary and he expressed his concerns to his wife. This concern prompted Mrs. Hebert to call the Clerk of Court to determine if a lawsuit had been filed. In Mrs. Hebert’s deposition, she unequivocally stated that the Clerk’s office told her on that day that no suit had been filed. Mrs. Hebert testified at trial that she did not understand the term “filed”; she thought that when the clerk informed her that the suit had not been filed, the clerk meant that her suit was not coming up for trial. Under cross examination, however, her testimony was impeached by her prior deposition. On her deposition she stated four times, and in differing language, that she then knew that her suit was not filed.
A few days after Mrs. Hebert telephoned the Clerk’s office, the Heberts fired Chester Cedars and hired attorney Ken DeJean to represent them.
Mr. DeJean testified at trial that the Heberts came to him because they were concerned that Mr. Cedars had not filed a lawsuit against Riberglass. Mr. DeJean instructed them that they could go to the Clerk of Court to determine if a suit had been filed. Later Mr. DeJean called Mr. Cedars to discuss the status of the He-berts’ legal matters. Mr. DeJean stated on the stand that “Mr. Cedars told me that ‘everything has been done’ or ‘everything is under control’, something to that effect”.
Finally, on October 26, 1988, a letter was sent to Mr. DeJean from Mr. Cedars which indicated that he had not filed a lawsuit in redhibition against Riberglass nor had he filed a reconventional demand to the suit on the promissory note brought by Riber-glass against Royal. Subsequently, on February 3,1989, Mr. DeJean filed a recon-ventional demand to the suit on the promissory note brought by Riberglass. On March 17, 1989, Riberglass filed an exception of prescription to the reconventional demand.
*284 On October 25, 1989, Royal filed this lawsuit against Chester Cedars seeking damages for failure to file timely their suit against Riberglass. In addition to denying the allegations, Mr. Cedars contends that Royal’s lawsuit against him has prescribed.
The applicable prescriptive period for tor-tious conduct is governed by Louisiana Civil Code Article 3492, which provides for a one year prescriptive period. This one year prescriptive period does not begin to run until damage is sustained. Rayne State Bank & Trust Co. v. National Union Fire Ins. Co., et al., 438 [483] So.2d 987 (La. 1986). As a basis for a damage claim, it is sufficient for the plaintiff to show that a loss is going to be suffered or is sure to result. Allain v. First Guaranty Bank, 491 So.2d 60 (La.App. 1st Cir.), writ denied, 494 So.2d 1179 (1986).
The Louisiana Supreme Court, in discussing when damage is sustained for legal malpractice cases, stated that the mere breach of a professional duty, causing only nominal damages, speculative harm, or the threat of future harm — not yet realized— does not suffice to create a delictual action. Rayne State Bank and Trust Co. v. National Union Fire Insurance Co., 483 So.2d 987 (La.1986). Until the client suffers appreciable harm as a consequence of his attorney’s negligence, the client cannot establish a cause of action for malpractice. Brand v. New England Insurance Company, 576 So.2d 466 (La.1991).
An exception to the above rule occurs when the malpractice complained of involves prescription of a claim. When a claim prescribes, the certainty of damage to a plaintiff is not speculative. Olivier v. Poirier, 563 So.2d 1227 (La.App. 1st Cir. 1990).
The Heberts urge this court to adopt the position that no damage was sustained until prescription was pled on the reconven-tional demand. However, this position imposes on a claimant the affirmative duty to file suit on a prescribed cause of action prior to pursuing his malpractice claim. Since a plaintiff’s loss is sufficiently susceptible of proof on the date his underlying action prescribes, prescription on his malpractice claim begins to run either on that date or on the date he receives notice enabling discovery of the malpractice, which ever occurs later. Poirier at 1229.
In accordance with the Poirier decision, this court must first determine when the Heberts initial suit prescribed. The initial action is the action in redhibition that Royal had against Riberglass due to the defective gel coat supplied by Riberglass. The He-berts noticed their pools yellowing in late 1985 or early 1986. In September 1986 they met with Mr. Cedars to discuss their financial loss due to the defective gel coat. Prescription begins to run when there is notice enough to call for inquiry. Cartwright v. Chrysler Corporation, [255 La. 597,] 232 So.2d 285 (La.1970). Therefore, the court determines that the prescriptive period on the Heberts suit in redhibition against Riberglass began running no later than September 1986. The redhibition suit prescribed September 1987. It is on this date that the Heberts sustained damage sufficient for the basis of a malpractice claim against Cedars due to the fact that Mr. Cedars allowed their suit against Ri-berglass to prescribe.
The court must next determine when the Heberts had knowledge that they had suffered damage due to Cedars’ negligent act of allowing their suit against Riberglass to prescribe. To actuate the running of the prescriptive period, it is necessary that the plaintiff have knowledge that damage has been sustained. “It is not necessary that the party have actual knowledge of the conditions as long as there is ‘constructive notice.’ Whatever is notice enough to excite attention and put the [plaintiff] on his guard and call for inquiry is tantamount to knowledge or notice of every thing to which inquiry may lead and such information or knowledge as ought to reasonably put the [plaintiff] on inquiry is sufficient to start the running of prescription.” Cartwright v. Chrysler Corporation, [255 La. 597] 232 So.2d 285 (La.1970).
The Heberts argue that they did not have knowledge that the suit had not been filed until Ken DeJean received the letter from Cedars stating that no suit had been *285 filed. The evidence, however, is to the contrary. The Heberts, in their depositions and at the trial on the exception, spoke at length about their concerns whether suit had been filed. In August of 1988 Mrs. Hebert called the Clerk’s office to inquire; Mr. Hebert looked in the newspaper; they contacted another attorney; they fired Mr. Cedars; they hired another attorney who instructed them to contact Mr. Cedars and/or the Clerk of Court to find out if the suit had been filed. This evidence demonstrates that on August of 1988 the Heberts had notice enough to excite their attention and call for further inquiry.
It is noted that Ken DeJean took the stand and testified that he called Cedars who told him that all was under control. He stated that he relayed this to the He-berts and it seemed to put their mind at ease for a time. Mr. DeJean, however, was not able to testify as to the exact date of that phone call. He stated it could have been anytime up until October of 1988. Mr. DeJean’s testimony alone does not persuade the court to disregard all of the evidence and testimony concerning the He-berts’ earlier concerns that no suit had been filed by Mr. Cedars.
Royal’s action in redhibition against Ri-berglass prescribed in September of 1987. This court finds that the Heberts’ had suspicions for several months that their redhi-bition suit had not been filed and confirmed these suspicions in August of 1988 when Mrs. Hebert called the Clerk’s office. Therefore, the legal malpractice suit filed October 25, 1989 against Chester Cedars has prescribed.
For the above reasons, the defendant’s exception of prescription is sustained.
Officially granted this 1st day of July, 1991 at New Iberia, Iberia Parish, Louisiana.
/s/Anne Lennan Simon ANNE LENNAN SIMON DISTRICT JUDGE