WHIPPLE, Judge.
Plaintiff, Parish National Bank of St. Tammany (PNB), appeals the judgment of the trial court rendered in favor of defendants, Phillip L. Williams and Catherine S. Williams, dismissing with prejudice PNB’s suit on a promissory note. We affirm.
FACTS AND PROCEDURAL HISTORY
The facts of this case were succinctly set forth by the trial court in its reasons for judgment, as follows:
In March 1989, Parish National Bank agreed to establish a $15,000.00 line of credit for Rhondan, Inc. A $15,000.00 promissory note was executed on March 22,1989, and personally endorsed by Phillip L. Williams, Catherine S. Williams, Dan E. Leath, and Rhonda W. Leath.
Chris Blossman, Assistant Vice President and Lending Officer of the plaintiff bank, became involved in the Rhondan transaction in February 1990. At or before the March 22, 1990, maturity date of the above mentioned note, Mr. Blossman contacted Dan Leath to refinance Rhon-dan, Inc.’s obligation with the bank.
*291 Although Phillip L. Williams was Treasurer of Rhondan, Inc., he was not personally involved in the management of the trucking business conducted by the corporation. During late 1989 or early 1990, Phillip N. Williams, Jr., father of Phillip L. Williams, concluded that he wanted out of the business, and conducted a liquidation analysis of the corporation. Phillip L. Williams also determined that he no longer wanted to personally guarantee the corporate obligations of Rhondan, Inc.
In March 1990, only Dan Leath went to the bank at Mandeville to discuss refinancing with Mr. Blossman. Mr. Blossman had a bank employee prepare a promissory note dated March 30, 1990, in the amount of $15,000.00 to renew the March 22, 1989, obligation. This note showed the borrower to be Rhondan, Inc. The signature portion of the note simply showed Rhondan, Inc., and below it signature lines for Dan Leath, Rhonda Leath, Phillip Williams, and Catherine S. Williams. The back of the note also provided for a personal guaranty that was ultimately signed by Dan Leath and Rhonda Leath, only.
Mr. Blossman authorized Dan Leath to take the note out of the bank for the purpose of securing the signatures of Phillip L. Williams and Catherine S. Williams. With note in hand, Dan Leath went to the St. Paul’s School in Covington, where Phillip Williams taught, and asked that Mr. Williams sign the note and secure the signature of Mrs. Williams. Phillip Williams declined and informed Dan Leath that he and Mrs. Williams would no longer personally guarantee the obligations of Rhondan, Inc. Dan Leath departed and later came to Mr. Williams with the assurances that Parish National Bank did not require them to personally guarantee payment of teh corporate obligation, but simply wanted them to sign the note as stock holders of Rhondan, Inc. With this assurance, Phillip L. Williams personally signed the note and also placed his wife’s name on the note.
Prior to execution of the March 30,1990, note, Mr. Blossman visited with Dan Leath and Rhonda Leath at the corporate offices in Bush, Louisiana, where refinancing of the 1989 $15,000.00 note was discussed. He was informed by Mrs. Leath that the Williamses no longer wanted to remain personally liable for the corporate obligations, and Mr. Blossman assured the Leaths that the signatures of Dan and Rhonda Leath were sufficient security. When the note matured in March 1991, there was a balance owing of $12,544.03. The bank was not paid, and this lawsuit followed.
On April 8, 1991, PNB filed suit against Dan Leath, Rhonda Leath, Phillip L. Williams, Catherine S. Williams, and Rhon-dan, Inc., to collect the balance due on the note in the amount of $12,544.03, plus interest and attorney’s fees.[1] Defendants, Phillip L. and Catherine Williams, filed an answer and reconventional demand seeking damages.
Following a one day bench trial, judgment was rendered dismissing plaintiff’s suit and also dismissing the reconventional demand filed by Phillip L. and Catherine Williams.[2] PNB appeals, contending that the trial court erred in finding that Phillip L. and Catherine Williams were not personally liable on the note.
DISCUSSION
LSA-R.S. 10:3-403 is applicable to this case and provides as follows:
§ 3-403. Signature by authorized representative
(1) A signature may be made by an agent or other representative, and his authority to make it may be established as in other cases of representation. No particular form of appointment is necessary to establish such authority.
(2) An authorized representative who signs his own name to an instrument
*292 (a) is personally obligated if the instrument neither names the person represented nor shows that the representative signed in a representative capacity;
(b) except as otherwise established between the immediate parties, is personally obligated if the instrument names the person represented but does not show that the representative signed in a representative capacity, or if the instrument does not name the person represented but does ■show that the representative signed in a representative capacity.
(3) Except as otherwise established the name of an organization preceded or followed by the name and office of an authorized individual is a signature made in a representative capacity.[3]
The trial court concluded that Phillip L. and Catherine Williams were not personally liable on the note in question, relying on the above cited provisions of LSA-R.S. 10:3-403(2)(b).
As we have previously recognized, this section sets forth a rebuttable presumption between the immediate parties that the representative who signs an instrument which names the person represented but does not show that the representative signed in a representative capacity is personally obligated on the instrument. See Fidelity National Bank of Baton Rouge v. Red Stick Wholesale Music Distributors, Inc., 423 So.2d 15, 16 (La.App. 1st Cir.1982). However, parol evidence is admissible to rebut the presumption of the representative’s personal liability; that is, to show that personal liability was not intended by his signature. Fidelity National Bank of Baton Rouge, 423 So.2d at 16.
As the trial court properly observed, the resolution of this case turns on a purely factual determination: ie., whether Mr. and Mrs. Williams signed the note solely as representatives of Rhondan, Inc., with no intent to be personally liable for the note.
Phillip L. Williams testified unequivocally at trial that he and Catherine Williams had no intention of personally guaranteeing the renewal note, and that he specifically told Dan Leath that they would not personally guarantee the obligation. Williams testified that Dan Leath brought the note to his place of employment, requesting Phillip L. Williams’ signature; however, he refused. According to Williams, Dan Leath left and later returned, assuring him that his signature and his wife’s signature were needed merely because they were stockholders in the corporation. Dan Leath further assured Williams that the bank did not require personal guarantees from Williams or his wife. Based on these assurances, Williams then signed his name and his wife’s name on the instrument.
Williams stated that prior to signing the note, he examined the note and observed a signature space on the back reserved for a personal guaranty. Both Dan Leath and Rhonda Leath had signed on those signature lines. Williams further stated at trial that because he was not asked to sign on the reverse side of the note, he believed Dan Leath’s assertion that the bank sought their signatures solely as representatives of the corporation.
Chris Blossman, the loan officer who handled the Rhondan, Inc., loan renewal, also testified at trial. However, Blossman emphatically stated that the bank had no intention of renewing the loan without the personal guarantees of Phillip and Catherine Williams. According to Blossman, the financial strength of Rhondan, Inc., alone, or even Rhondan, Inc., with the Leaths’ personal guarantees, was insufficient to support renewal of the loan.
Rhonda Leath’s version of the events surrounding the execution of the note directly contradicted Blossman’s testimony. Rhonda Leath testified that in March of 1990, Bloss-man visited Rhondan, Inc.’s office to discuss renewing the loan. According to Rhonda Leath, Blossman informed her that the bank was willing to extend the credit to Rhondan, Inc., without the Williams’ personal guaran *293 tee and that the bank would only require personal guarantees from the Leaths, because of their good credit history.
However, at trial, Blossman denied that this conversation ever occurred and denied that the bank would have been willing to extend the credit without the Williams’ personal guarantees.
The trial court, relying on LSA-R.S. 10:3-403(2)(b), found from the evidence that the parties did not intend that Phillip L. and Catherine Williams sign in an individual capacity, and that their signatures were instead made in a representative capacity. As illustrated by the testimony above, the witnesses at trial offered conflicting versions of the events which occurred prior to the execution of the note in question. The trial court had the opportunity to evaluate the credibility of the witnesses involved and concluded that the parties did not intend that Phillip L. and Catherine Williams would be personally obligated on the note.
A court of appeal may not set aside a trial court’s finding of fact in the absence of “manifest error” or unless it is “clearly wrong,” and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). When findings are based on determinations regarding the credibility of witnesses, the manifest error — clearly wrong standard demands great deference to the trier of fact’s findings. Rosell, 549 So.2d at 844.
After carefully reviewing the record, we find ample support for the trial court’s conclusions. Considering the record in its entirety, we are unable to say that the trial court manifestly erred or was clearly wrong in its determinations.
We note, as did the trial court, that any ambiguity concerning the capacity in which Phillip L. and Catherine Williams were signing could have been avoided by the bank requiring them to come into the office to execute the promissory note. Instead, the bank allowed Dan Leath to act on the bank’s behalf in getting the note signed, and therefore, should be bound by the assertions made by Dan Leath to Phillip L. Williams.
CONCLUSION
For the above and foregoing reasons, we find no error in the judgment of the lower court. Accordingly, we affirm the judgment of the trial court in favor of the defendants, Phillip L. Williams and Catherine S. Williams, and against plaintiff, Parish National Bank of St. Tammany, dismissing its suit against these defendants. All costs of this appeal are assessed against the plaintiff/appellant, Parish National Bank of St. Tammany.
AFFIRMED.

. On January 14, 1992, a preliminary default was entered against Rhondan, Inc., Dan Leath and Rhonda Leath. Judgment was signed in favor of PNB and against these parties on September 14, 1992. No appeal was taken from that judgment.

. No appeal was taken by Phillip L. Williams or Catherine S. Williams from the trial court's dismissal of their reconventional demand.

. Chapter 3 of Title 10, consisting of LSA-R.S. 10:3-101 through 10:3-807, was amended and reenacted by Acts 1992, No. 1133, § 3, to consist of LSA-R.S. 10:3-101 to 10:3-605, effective January 1, 1994. These amendments are not applicable to the facts of this case.