GUIDRY, JUDGE.
This is a suit to enforce a personal guarantee of a corporate debt. Royce Schroeder, president of OFI Testing Equipment, Incorporated (OFI), sued defendant, James Lacy, president and sole shareholder of SAFF, Incorporated (SAFF), to enforce Lacy’s personal guarantee to Schroeder of unpaid invoices owed by SAFF to OFI. The trial court found Lacy’s personal guarantee to be valid and enforceable, but it refused to award Schroeder any monetary amount because of insufficient evidence in the record to prove the amount owed. Essentially, the trial court held that plaintiff failed to carry his burden of proof because he failed to offer evidence of the debt actually secured by Lacy’s personal guarantee, i.e., the unpaid invoices. Plaintiff appealed. Defendant answered the appeal urging that any amount which may be found owing should be set off by unpaid commissions owed by OFI to SAFF resulting from OFI’s breach of an alleged exclusive distributorship agreement.
FACTS
Plaintiff, Royce Schroeder, is president of and owns 23% of the stock of OFI, a Texas corporation headquartered in Houston. The company is controlled by its majority shareholder, W.S. Shamban and Company (Shamban), a Delaware corporation with offices in California, which owns 51% of the OFI stock.' OFI is in the business of manufacturing and marketing oilfield equipment and chemicals. In 1983, OFI and SAFF entered into an oral agreement making SAFF a distributor of OFI’s products in Louisiana. SAFF was to receive the products from OFI at a “Dealer Price”, 20% below “Customer Price”, to allow for SAFF’s profit margin. The distributorship agreement was never reduced to writing. Lacy and Pam Dufour, the salesperson employed by SAFF, testified that it was their understanding that SAFF was to be the exclusive distributor of OFI products in Louisiana. Schroeder testified that no exclusive distributorship was ever offered to SAFF and that OFI policy was to not enter into such arrangements. The trial court found that no exclusive distributorship agreement was intended or existed.
The relationship between OFI and SAFF proceeded smoothly until the spring of 1984, when SAFF’s account with OFI became seriously delinquent. SAFF had begun to delay payment on outstanding invoices and its outstanding account balance became larger. At about the same time, Lacy and Dufour discovered, allegedly for the first time, that other distributors in Louisiana were selling OFI products. On May 24, 1984, Lacy wrote Schroeder requesting that their distributorship agreement be reduced to writing. Schroeder did not reply to this request.
In August 1984, SAFF’s account balance with OFI had increased and SAFF was 90 to 120 days behind on its payments to OFI. Shamban ordered Schroeder to withhold further shipments of products to SAFF until such time as its account became current. When notified of this, Dufour and Lacy contacted Schroeder and eventually negotiated an agreement satisfactory to Shamban which would allow shipments to continue. The agreement involved a personal guarantee by Schroeder to Shamban contained in his September 17, 1984 letter which read, “I will personally guarantee any OFITE invoices that are unpaid beyond 90 days from the date of invoice effective December 31, 1984”. This letter also related that Lacy had agreed to have the SAFF account within 90 day terms by December 31, 1984 and within 60 day terms by March 31,1985. In return for Schroeder’s guarantee to Shamban, Lacy, by letter to Schroeder dated October 11,1984, promised “I personally guarantee to you, Royce Schroeder, any *148 OFITE invoices that are unpaid by SAFF beyond 90 days from the date of invoice effective December 31, 1984”. Lacy’s personal guarantee also expressly incorporated the substance of Schroeder’s prior letter of guarantee to Shamban. Lacy agreed to guarantee the payment of the outstanding invoices to Schroeder in the event that Schroeder was called upon by Shamban under the terms of his guarantee to satisfy the debt. The parties also agreed to new billing procedures. After September 24, 1984, OFI was to bill SAFF’s customers directly for new orders and credit SAFF’s account for the 20% commission upon payment to OFI by the customers. Pursuant to the agreement, after that date, no new invoices were generated from OFI to SAFF. The arrangement continued under these new terms for two weeks when OFI once again discontinued shipments to SAFF.
Following discontinuance of further shipments, OFI filed suit against SAFF and WAPRE International, Incorporated (WAPRE), another corporation owned by Lacy which marketed oilfield equipment to international purchasers. The purpose of that suit was to collect on the corporations’ delinquent accounts with OFI and resulted in a consent judgment dated October 2, 1986 in favor of OFI for $37,598.47 with interest from judicial demand until paid, plus 10% attorney’s fees on principal and interest, subject to a credit in favor of SAFF and WAPRE in the amount of $4,273.25. SAFF and WAPRE were expressly bound in solido by the judgment.
Following entry of the consent judgment, Shamban required Schroeder to execute a demand promissory note in payment of his personal guarantee pursuant to the September 17, 1984 letter. The note was in the amount of $41,185.74 plus 10% interest and an attorney’s fees provision. Thereafter, Schroeder filed this suit against Lacy to enforce Lacy’s personal guarantee to Schroeder contained in the October 11, 1984 letter.
The trial court, in written reasons for judgment dated January 22, 1990, determined that both guarantees were valid and that the Lacy guarantee encompassed all OFI invoices unpaid beyond 90 days by SAFF which were written prior to September 18, 1984, the effective date of the aforementioned new billing procedures. The status of any invoice was to be determined as of December 31, 1984, the date upon which the guarantee became effective. Thus, the trial court reasoned that the invoices written prior to September 18, 1984, which remained unpaid on December 31, 1984, were covered by the Lacy personal guarantee since more than 90 days had elapsed since that date. The court did not, in its written reasons, make a specific monetary award to Schroeder, choosing instead to rule on the award issue at a later date after further examination of the record. In addition, the court made a factual determination that Schroeder did not promise and that OFI and SAFF did not enter into an exclusive distributorship agreement and, therefore, defendant’s claim of set off was unfounded.
In reasons for judgment dated April 20, 1990, the court determined that no invoices were in the record which fit the requirements of Lacy’s personal guarantee to Schroeder. Accordingly, it interpreted the suretyship agreement strictly in favor of the surety in finding no evidence in the record to accurately calculate an award to Schroeder. Judgment dismissing plaintiff's claim at his cost was then rendered.
On appeal, plaintiff urges that, even though he did not enter into evidence actual invoices covered by the guarantee, he nevertheless proved the existence of the underlying obligation by other sufficient competent evidence. Specifically, Schroeder asserts that the trial court erred in not finding that the consent judgment was an accurate reflection of the amount due on the qualifying overdue invoices. He also asserts that the demand note and the affidavit of Andrew Martin, the assistant secretary of Shamban, were sufficiently corroborative of the judgment for the court to make an award based on the net amount of the consent judgment. He points to his own testimony as also being sufficiently corroborative of the fact that the net amount of the judgment, $33,325.22, was *149 established as the amount of the underlying debt covered by the personal guarantee. As to the $7,860.52 difference between the amount of the consent judgment and the note, plaintiff asserts this amount constitutes accrued interest and attorney’s fees. In the alternative, Schroeder asks this court to remand this case to the trial court for further proceedings to allow him to prove the amount owed by entering the qualifying invoices into the record.
LAW AND ANALYSIS
It is well settled that the plaintiff in a civil action has the burden of proving all facts necessary to his recovery by a preponderance of the evidence. Crowell v. City of Alexandria Through Snyder, 558 So.2d 216 (La.1990); Fontenot v. Fontenot, 546 So.2d 322 (La.App. 3rd Cir.1989). A finding by the trial court that the plaintiff did not present evidence sufficient to carry his burden of proof is a factual determination subject to the manifest error/clearly wrong standard of appellate review most recently explained in Rosell v. Esco, 549 So.2d 840 (La.1989). Schroeder testified that Shamban prepared the note which reflected the balance due under the judgment plus interest. In addition, the affidavit of Martin on behalf of Shamban states, in pertinent part, that “Royce Schroeder did ... give a promissory note to W.S. Sham-ban in full and complete payment of his personal guarantee, in consideration of forbearance by W.S. Shamban and Company in filing suit on the personal guarantee”. The guarantees, the consent judgment, the demand note signed by Schroeder, and Martin’s affidavit were entered in evidence.
The trial judge strictly construed the suretyship agreements to cover a certain class of invoices which were not introduced in evidence. As such, the court reasoned that it had no choice but to deny recovery to the plaintiff. In our opinion, this ruling was not clearly wrong. A contract of suretyship must be strictly construed. La.C.C. arts. 3038 and 3044; Fiberglass Pipe and Specialty, Inc. v. Acadiana Bank, 510 So.2d 1354 (La.App. 3rd Cir.1987). To prove an amount owed under the terms of Lacy’s guarantee, Schroeder was required to present the actual unpaid invoices which form the basis of the guarantee. The judgment cannot form the basis of Lacy’s indebtedness since it was rendered against SAFF and WAPRE in solido and Lacy only guaranteed the invoices of SAFF. There is no way to determine which invoices of which company form the basis of the judgment. Having failed to enter actual invoices into the record, Schroeder did not sufficiently prove the amount owed by Lacy and the trial court did not err in denying Shroeder monetary recovery.
As to Schroeder’s alternative request that we remand this case to the trial court to allow him to present the actual invoices into evidence, we find merit. Clearly, Schroeder established the liability of Lacy in accordance with his personal guarantee, but failed to prove the outstanding balance owed by competent evidence. An appellate court is empowered to “... render any judgment which is just, legal, and proper upon the record on appeal”. La.C.C.P. art. 2164. Encompassed within the scope of this power is the right to remand a case to the trial court for the taking of competent evidence on the issue of the amount of an award when liability is clearly established at trial. In J.R. Watkins Company v. Brumfield, 86 So2d 263 (La.App. 1st Cir.1956), our brethren of the First Circuit remanded a similar case in which it found that proof of the surety’s obligation by the principal’s bankruptcy schedules was not competent evidence to prove the amount owed. The court remanded the case for the limited purpose of allowing the plaintiff to prove the amount owed by introduction of competent evidence. Likewise, we will remand this matter to the trial court for the restricted purpose of permitting Schroeder to introduce competent evidence of the balance due in light of the strict terms of the surety agreement between Lacy and Schroeder.
Lacy does not, in his answer to the appeal, question the trial court’s decision with regard to the validity and enforceability of the personal guarantee executed by him on *150 October 11, 1984. He does, however, urge that the trial court erred when it concluded that SAFF was not granted an exclusive distributorship and that defendant’s claim of set off is illfounded.
We find no clear error in the trial court’s factual conclusion that SAFF was not granted an exclusive distributorship for Louisiana. As such, Lacy is not entitled to any set off for breach of the alleged exclusive distributorship agreement.
For the above and foregoing reasons, this matter is remanded to the trial court for the limited purpose of retrying the quantum issue in accordance with the views expressed. In all other respects, the judgment of the trial court is affirmed. Plaintiff-appellant is cast with all costs of this appeal.
AFFIRMED AND REMANDED.