JOHN A. PATIN, Judge Pro Tern.
This is a personal injury lawsuit. Ray Capterville, appellant, while working as a sugar cane truck driver for Edward Zenon, Sr., suffered injury when his foot was struck by a heavy metal manifold at the Jeanerette Sugar Company. Capterville filed suit against Jeanerette Sugar Company and its insurer, United States Fidelity and Guaranty, appellees. The case was tried before a jury. While the jury returned a verdict in favor of Capterville, it also found him 60% comparatively negligent. Capterville appeals alleging that the jury committed manifest error in assessing greater fault to him, than to Jeanerette, and more specifically alleging that at most his fault should have been assessed at 10%.
In October of 1987, Ray Capterville, appellant, was employed as a sugar cane truck driver, by Edward Zenon, Sr. Cap-terville drove sugar cane trailers from the Zenon Farm to the Jeanerette Sugar Mill. Once at Jeanerette, the unloading procedure consisted of driving the sugar cane trailer in between a crane and a large conveyor belt type system called a “loading” or “feed table”. The sugar cane was then lifted from each compartment of the trailer, by the crane, and dumped on the “feed table”. The “manifold” was attached to chains and used to contain the sugar cane. It was a large metal device weighing 800-1,000 pounds.
On the morning of October 22, 1987, Capterville was driving a two compartment sugar cane trailer. The first compartment was unloaded without incident. Then Cap-terville pulled his trailer up a little further so that the crane operator could begin unloading the second compartment. He was given the signal to stop by the crane operator. Capterville exited the truck’s cab from the driver’s side and crawled underneath and up into the first compartment of his trailer “to throw out scrap cane”. The manifold from the first compartment fell and struck Capterville’s foot, injuring it.
Capterville filed suit against Jeanerette and its insurer United States Fidelity and Guaranty. Capterville’s arguments for recovery were that: he had done nothing negligent because his conduct was common practice among the sugar cane truck drivers; Jeanerette had a duty to warn drivers not to crawl under and into trailer compartments to begin cleaning them out before the crane had finished unloading; Jeaner-ette’s employee, the crane operator, had a *308 duty to make certain that the first compartment was empty of drivers before he began to empty the second compartment; Jeaner-ette’s employee, the crane operator, had a duty to remove and to replace the manifold so that it would not fall.
U.S.F. & G.’s arguments against Capter-ville’s recovery were that Capterville was injured either through his own fault or through the fault of his employer, who loaded the sugar cane trailer so that sugar cane interfered with the manifold, causing it to fall. Further that Jeanerette was not legally responsible for Capterville’s injuries, either directly or through its crane operator.
The jury verdict found Capterville 60% at fault and Jeanerette 40% at fault. Damages were fixed as follows:
Past and future lost wages $150,000
Past and future medical expenses $ 41,500
Past and future pain and suffering $ 80,000
Physical disability and disfigurement $ 20,000
$291,500
Capterville alleges that the jury’s findings as to percentages of fault are manifestly erroneous, and urges us to reverse the said findings and assess his fault at 0%.
La.Civ.Code art. 2323, provides:
When contributory negligence is applicable to a claim for damages, its effect shall be as follows: If a person suffers injury, death or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the claim for damages shall not thereby be defeated, but the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death or loss.
We are asked to upset a jury’s findings as to percentages of fault. These findings are factual. Triangle Trucking Co. v. Alexander, 451 So.2d 638 (La.App. 3d Cir.1984). A court of appeal may not set aside a jury’s finding of fact in the absence of manifest error or unless it is clearly wrong. Rosell v. Esco, 549 So.2d 840 (La.1989).
At trial, Capterville testified regarding the events directly preceding his accident. In response to questions from his counsel, Capterville stated:
Q. After you moved the truck up, what did you do then?
A. I was still looking on the passenger side through my mirror to see when he was going to, you know, slap this cable deal up against the second compartment of my truck, the trailer.
Q. And when he did that, what happened?
A. I stopped.
Q. Then what did you do?
A. I put my brakes, my emergency brakes and stuff on, got out the truck and I got up, you know, in the trailer, and started throwing out scrap cane.
Capterville's own testimony and other parts of the record establish that after Capterville was given a signal from the crane operator that his trailer was in the correct place for unloading, and with unloading imminent, Capterville exited the cab of his truck from the side furthest away from the crane operator and crawled under and into his sugar cane trailer. In response to questions from U.S.F. & G.’s counsel Capterville answered:
Q. Yes. So my question was, was there any reason for you to have done it at that precise moment?
A. I guess not.
Q. You could have waited until the unloading operation had been completed, and then got into the trailer and cleaned it out, couldn’t you?
A. Yes, sir.
Q. There were no trucks behind you, so you wouldn’t have kept anybody waiting.
A. Right.
On the issue of whether Capterville thought it was safe to begin cleaning out his trailer, while approximately twenty tons *309 of sugar cane were in the process of being unloaded by crane, manifold, and chains, Capterville commented:
Q. You think it’s a safe practice?
A. I’m not going to say it’s safe.
Q. Were you safer inside the cab than you were inside the trailer?
A. I wouldn’t say that when it comes to a manifold.
Q. Are you safer inside the cab that you are inside of the trailer?
A. From some point of view.
Q. Well, if you had stayed inside the cab, this accident never would, have happened. Would you agree with that?
A. Yes, sir.
On this same issue, whether it was safe to begin cleaning out the sugar cane trailer while unloading was in progress, Joseph J. Gilbert, one of Capterville’s fellow drivers and one of his witnesses testified:
Q. Mr. Gilbert, then, do you think it’s safe to get into the compartment while it’s being unloaded?
A. Well, no, no, sir. I don’t think so. Whenever I had to, you know, whenever I went to the mill and unloaded, if I get into the, you know, after the compartment was empty, I’d get in, but I kept my eyes open, you know. I wasn’t just afraid of the manifold or whatnot, I, my eyes were on the cables and, you know, the chains and whatnot, ’cause you never knew what was going to happen, you know.
Q. So it’s not just the manifold that can hurt you, there’s a lot of other things that can hurt you?
A. Well, I think so.
Both Capterville and U.S.F. & G. proffer Watson v. State Farm Fire and Casualty Ins. Co., 469 So.2d 967 (La.1985), as authority for their respective positions. In Watson, supra, the Louisiana Supreme Court, in addressing a wrongful death claim resulting from a hunting accident, offered guidelines for determining percentages of fault. The court stated:
... we have looked to the Uniform Comparative Fault Act, 2(b) and Comment (as revised in 1979), which incorporates direction for the trier of fact. Section 2(b) provides:
In determining the percentages of fault, the trier of fact shall consider both the nature of the conduct of each party at fault and the extent of the causal relation between the conduct and the damages claimed.
In assessing the nature of the conduct of the parties, various factors may influence the degree of fault assigned, including: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. And, of course, as evidenced by concepts such as last clear chance, the relationship between the fault/negligent conduct and the harm to the plaintiff are considerations in determining the relative fault of the parties.
While the evidence clearly established fault on the part of the plaintiff it is significant that the procedure of the plaintiff was one commonly followed by most, if not all, of the cane haulers. The defendant sugar-mill presented no evidence to refute the fact that what the plaintiff did was a universal practice of the truck drivers at the mill. As far as the record is concerned, there had never been such an accident such as this for as long as anyone could remember. Although the plant manager testified that he considered the practice unsafe and had personally told some drivers not to do it, the plaintiff was not so warned. Additionally there was no written notice to farmers asking them to instruct their drivers not to engage in the practice.
Utilizing the guidelines in Watson v. State Farm Fire and Casualty Insurance Co., 469 So.2d 967 (La.1985) and considering all of the evidence, we find the jury *310 was clearly wrong in .its assessment of fault. We conclude that the degree of fault assigned to the plaintiff can be no more than 40% with 60% on the part of defendant.
For the reasons we have discussed we amend the judgment of the trial court so as to find Capterville 40% at fault and Jeaner-ette 60% at fault. In all other respects the judgment is affirmed. Costs of this appeal will be paid by appellee.
AFFIRMED IN PART, AMENDED IN PART AND RENDERED.