LANDRIEU, Judge.
This appeal arises from an award for alleged personal injuries sustained in an accident.
On December 10, 1984 on Burdette Street in New Orleans, Louisiana, Darryle Lewis was repairing his mother’s automobile when a Carolina Freight truck being driven by Alvin Cálice caught a low hanging South Central Bell wire, causing the pole to which the wire was attached to fall. It is undisputed that the pole hit the automobile upon which Lewis was working.
Lewis filed suit against Cálice, South Central Bell, South Carolina Freight, XYZ Insurance Company, and New Orleans Public Service for injuries allegedly sustained as a result of the accident. The case was tried by a jury which awarded plaintiff general damages in the amount of $37,-000.00, past medicals of $5,300.00, future medicals of $6,000.00, past lost wages of $62,000.00 and future lost wages of $25,-000.00. Liability was allocated 25% to Carolina Freight and 75% to South Central Bell. Carolina Freight and South Central Bell have appealed.
Immediately following the accident, plaintiff was met by paramedic Henry Holmes at the scene of the accident. Holmes testified that he found plaintiff lying on his back on the ground, conscious and alert, complaining of back pain. Plaintiff told the paramedic that the pole hit the car while he was inside of it, but did not actually hit him. Holmes found no obvious sign of trauma. The plaintiff was transported to Oschner Hospital. No objective signs of injury were found.
The plaintiff told Oschner physicians that he struck his forehead on the steering wheel after the car he was in was hit by a falling telephone pole. He stated that he was thrown forward and backward and, as a result, was thrown out of the car, hitting his right shoulder, back and hand. He told the doctors that he had no prior neck or head injuries. By the time of trial, plaintiff’s account of the accident had changed to allege that the pole first hit the car, then his head and left shoulder knocking him unconscious until he awoke at the hospital in a dazed state. Plaintiff’s medical history is as follows.
In December of 1983, plaintiff was admitted to Oschner Hospital for back problems and pain in the left side of his neck. The record is silent as to the origin of the pain.
On December 4, 1984, just six days before the accident at issue, he was involved in an automobile accident. Two days after that accident, he sought treatment from Dr. Landry, an orthopedic surgeon, complaining of neck, shoulder and wrist pain. Landry diagnosed a strained neck and shoulder. The plaintiff again saw Landry on the 13th of December. He told the doctor that he had gone to Oschner on the *1151 10th because his shoulder injury from the 4th was bothering him. He had his x-rays from the 10th sent to Landry. He never mentioned the accident with the pole. Landry stated that plaintiffs complaints were difficult to interpret because they could not be correlated with any part of the anatomy. There were no objective findings of injury.
Plaintiff was examined by Dr. Konlee on December 19, 1984 for the pole accident. Konlee found no signs of spasm or any other objective sign of injury.
In January of 1985, while he was seeing Landry for the automobile accident of December 4th, plaintiff sought treatment from Dr. Cracco, also an orthopedic surgeon. Plaintiff complained to Cracco of low back and neck pain due to an accident where a pole fell on his back. The doctor found no spasm, no neurological or physical abnormality and no atrophy or muscle weakness. The diagnosis was a mild cervical and lumbar strain based on subjective complaints. Cracco found that the plaintiff could resume work in three weeks. He saw the plaintiff again in April and found him to be normal.
Unbeknownst to his physicians, plaintiff had resumed work as a driver for Orleans Auto Parts in January of 1985, where he remained employed until he was involved in another automobile accident, discussed below.
On May 8, 1985, plaintiff was involved in an auto accident during his employment with Orleans Auto Parts. He sought treatment from Dr. Bogran, a general surgeon. Plaintiff complained of neck and knee injury with attendant headaches and neck pain. Examination revealed no objective sign of injury and plaintiff displayed a full range of neck motion.
On May 16, 1985, plaintiff sought treatment from Dr. Rauchwerk, an orthopedic surgeon, for alleged injuries stemming from the pole accident of December 10th. No objective signs of injury were found. Plaintiff did not tell the doctor of his auto accident of eight days before. Rauchwerk last examined plaintiff on September 16, 1985, discharging him “with full benefit from orthopedic treatment with no residual loss of function or stability”.
Plaintiff was involved in yet another automobile accident on January 15, 1986. On this same date he returned to Dr. Bo-gran complaining of pain in his neck, back, knees, left shoulder and left arm and attendant headaches. Bogran found his neck to be free of pain, but for the first time detected a muscle spasm in the lower back. He diagnosed the problem as being caused by the recent automobile accident. Plaintiff was discharged from his care in July of 1986 with no limitations.
In- April of 1986, plaintiff began treatment with Dr. Phillips, an orthopedic surgeon, for alleged the injuries of December 10th, 1984. Phillips was not informed of any other accidents, either before or after the December 10th incident. Plaintiff complained of pain in his neck and back. Mild spasm was found in the neck. Based on a diagnostically questionable procedure known as a discogram, Phillips diagnosed plaintiff as suffering from a herniated nucleus pulposus, an injury to the ligament which holds the disk in place. However, Phillips also testified that it doesn’t take long for a spasm to show up, usually the next day and rarely any later than two weeks. He stated that it was highly unusual that no muscle spasm was found by Konlee in his December 19, 1984 examination if indeed the injury had occurred nine days before that examination. Regarding causation of plaintiffs injuries, Phillips stated that he relied on the truthfulness of the statement that plaintiff was injured on December 10, 1984 and that if the history given was incorrect, his diagnosis as to causation would be incorrect. On August 29,1986, plaintiff was seen by Dr. Laborde, Chairman of the Department of Orthopedics at Touro Hospital. Plaintiff complained of pain from the telephone pole accident. Upon examination, Laborde found a very muscular man, indicative of an individual who engaged in significant physical activity. There was no muscle atrophy. He administered a CAT scan and an MRI and found no indication of a herniated cervical disk. Laborde testified that in his four and one-half years of examining *1152 the plaintiff, he never found evidence of a muscle spasm. There were no objective findings of injury. The doctor opined that the complaints were psychological in origin as there was no orthopedic explanation.
It is important to note that none of these treating physicians were ever given plaintiffs complete medical and factual history. The many treatments overlapped, yet the doctors did not know that the plaintiff had been treated elsewhere nor did they know that he had been involved in any accident other than that for which they were treating him. Plaintiff filed lawsuits in connection with three of the four above mentioned accidents, and settled another prior to suit. He does not deny that he deceived his doctors and asserts that he did so at the instruction of his former attorney.
The plaintiff in a personal injury suit must prove by a preponderance of the evidence fault, causation, and damage. LSA-C.C., art. 2316. He must prove that the defendant was negligent and this negligence caused the plaintiffs damage. Such proof need only be by a preponderance of the evidence. Walton v. Wolf, 406 So.2d 168 (La.1981); Guillory v. Avondale, 448 So.2d 1281 (La.1984). This court may not disturb the jury’s finding of fact unless it constitutes manifest error or is clearly wrong. Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact will not be disturbed upon review. Rosell v. ESCO, 549 So.2d 840 (La.1989). However, where objective evidence so contradicts a witness’ story or the story itself is so internally inconsistent that a reasonable fact finder would not credit the witness’ story, this court may find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. Rosell, supra. In the instant case, even assuming that plaintiff has suffered an injury as found by Phillips, we find that the plaintiff has failed to prove causation between that injury and defendant’s action.
Because plaintiff deceived his treating physicians concerning his medical history, any diagnosis as to causation would be unreliable. In the words of Dr. Phillips, if the history were incorrect the diagnosis would be incorrect. The plaintiff asserts that the injury found by Dr. Phillips, a herniated disk, was caused by the falling telephone pole on December 10, 1984. However, plaintiff has been treated on five known occasions for neck and back pain. There is nothing contained within this record, other than plaintiff’s bald assertion, to show that the alleged injuries were the result of the defendant’s actions. The plaintiff has admittedly been deceptive and untruthful to both his physicians and parties during the course of litigation, including testimony given under oath in this case.
It is clear from the record in this matter that the plaintiff failed to produce any evidence that his injuries were caused by the defendant’s actions. Therefore, we find that the jury verdict was clearly wrong and reverse the judgment below.
REVERSED.
JONES, J., dissents.