| iLOBRANO, Judge.
Defendants Larry Anderson and Jimmy Peterson, d/b/a P & A Management, appeal from a judgment ordering them to return the security deposit of their former tenant, plaintiff Alex Avis (Avis). The dispositive issue is whether Avis’s lease with defendants gave her the right to terminate her tenancy at will. For the following reasons, we affirm.
Avis filed suit against defendants on October 18, 1993, seeking to recover a $975.00 security deposit on an apartment which she rented from defendants. According to Avis’s petition, her lease with defendants contained a provision which allowed her to vacate the apartment upon furnishing thirty days written notice. Avis alleged that she provided notice in accordance with the lease, but that defendants failed to return her deposit.
The lease in question is a standard form contract. The stated term of the lease was April 1, 1993 to March 31, 1994. The lease contained the following automatic renewal clause, which appeared as a standard form provision at lines 8-11 of the lease:
If Lessee, or Lessor, desires that this lease terminate at the expiration of its term, he must give to the other party written notice at least 30 days prior to that date. Failure of either party to give this required ^notice will automatically renew this lease and all of the terms thereof except that the term of the lease will be for one month. This provision is a continuing *1091 one and will apply at the expiration of the original term and at the expiration of each subsequent term, (italics original)
In addition to the standard form provisions, the lease concluded with a blank area designated “Other Conditions.” The following provision was typewritten into the “Other Conditions” section at line 139: “30 day written notice to vacate property.” Avis maintains that she requested that this provision be included in the lease, and that she intended for the provision to afford her the right to terminate the lease at will, prior to expiration of the stated term. Defendants deny that Avis requested this provision, and aver that the provision was typed into the lease to clarify and reiterate the renewal clause at lines 8-11.
The trial judge heard testimony from six witnesses, including Avis and the defendants. Avis testified that she is an interior designer who moved to New Orleans from Seattle in 1993 to work on renovation projects. At the time of her move, Avis was aware that she might be offered a job in San Diego. Avis testified that she contacted real estate agent Mary Lind (Lind) about finding an apartment in New Orleans, and informed Lind that she required a cancellation clause in her lease so that she could relocate to San Diego if the job offer in that city materialized.
According to Avis, Lind found an apartment for her which was owned by P & A, and assured Avis that a cancellation clause could be inserted into her lease. When Avis received a copy of her lease with P & A, the disputed cancellation clause had already been typed in at line 139. Avis testified that she specifically asked Peterson and Lind about the. provision at line 139, and was assured that it was her cancellation clause.
|3On April 22, 1993, Avis was offered the job in San Diego. She promptly contacted Peterson, who told her to slip a notice of cancellation under the door of P & A’s office. Avis testified that she prepared a written notice, and delivered it as instructed. The notice, which was dated April 24, 1993, provided:
This letter serves as the 30 day notice to vacate clause incorporated into my lease.
Circumstances have forced me to return to San Diego in June; therefore, my last rent check will be for the month of June.
I anticipate leaving the apartment in better condition than it was when I occupied it. As Jimmy said the other day, I should not have any problem with the damage deposit being refunded in full since the apartment is in such good condition.
Avis testified that after she delivered the notice, defendants began showing her apartment to prospective tenants. According to Avis, Peterson secured new tenants, and asked to vacate early so that he could paint the apartment. Avis testified that she accommodated Peterson by moving out on June 18, even though she had paid the full amount of the June rent. Avis testified that she left the apartment in excellent condition.
Avis testified that Peterson promised to drop off her security deposit at the apartment on June 18, but failed to show up. Avis further testified that Peterson instructed her to return to New Orleans on two occasions to collect her deposit, but that he failed to tender the deposit on both occasions. When asked why she incurred an alleged $1,100.00 in flight and travel expenses in order to recover a $975.00 deposit, Avis indicated that she did so because Peterson reneged on a promise to mail the deposit to her.
Clark Thibodaux (Thibodaux) was a maintenance supervisor with P & A at the time Avis occupied her apartment. Thibodaux stated that he was ^discharged by P & A on July 30, 1993, immediately after he informed defendants that he would testify on Avis’s behalf if her dispute went to trial.
Thibodaux corroborated much of Avis’s testimony. He testified that Avis told him she provided defendants with notice of cancellation, and that he saw a copy of the notice after Peterson received it. He testified that Peterson told both Avis and himself that Avis’s deposit would be returned. Thibodaux further testified that defendants started showing Avis’s apartment to prospective tenants prior to the time Avis vacated, that defendants painted the apartment for their new tenants, and that the new tenants started paying rent immediately upon termination *1092 of Avis’s lease. Thibodaux also stated that Avis paid rent through the end of her occupancy, and left the apartment in good condition.
Thibodaux’s testimony was inconsistent with Avis’s testimony as to dates and time periods surrounding the various disputed events. Thibodaux also contradicted Avis’s testimony as to delivery of the notice of cancellation, stating that Avis gave the notice to him in a sealed envelope, and that he then delivered it to Peterson.
Lind and Peterson both denied negotiating or discussing a cancellation clause with Avis. Peterson denied receiving Avis’s notice of termination, and also denied telling Avis or Thibodaux that he was going to return Avis’s deposit.
Lind, Peterson, and Anderson all expressed their opinion that line 139 merely reiterated and clarified earlier provisions of the lease. Both Peterson and Anderson indicated that line 139 was a standard provision which appeared in other leases pertaining to their property. Peterson stated that without such reiteration, lessees thought they could move out without providing notice and still get their deposit back. Anderson indicated that reiteration helped ensure that a tenant would|5provide timely notice, thereby providing defendants with time to find new tenants and avoid a lapse in occupancy.
Defendants’ testimony as to the intent of line 139 was contradicted by Betty Fennell (Fennell), who was accepted as an expert in real estate. Fennell testified that she interpreted the provision in question as allowing the lessee or the lessor to terminate the lease upon providing thirty days notice. Fennell stated that it would not make sense to include the provision as a means of reiterating earlier provisions of the lease.
Judgment was rendered May 23, 1994, ordering defendants to return Avis’s security deposit and to pay all court costs. On June 17, 1994, the trial court issued the following reasons for judgment:
The Court is of the opinion’ that the language contained on Line 139 of the lease was included in the lease by the Defendants at the request of the Plaintiff for the sole purpose of allowing the parties the right to terminate the lease prior to term by giving thirty (30) days written notice.
The Court was not impressed with the Defendant’s explanation that the language on Line 139 was a restatement of the written notice requirements contained on Lines 8 & 9 of the lease. The Defendants have extensive experience in real estate dealings and the Court sees no reason for individuals with such experience to include language in a lease that restates otherwise clear and unambiguous provisions.
The Plaintiff gave timely notice of termination prior to term to the Defendants and is therefore, entitled to the recovery sought.
Defendants brought this appeal, arguing that the trial court erred in finding an ambiguity in the lease, in admitting parol evidence to interpret the ambiguity, in finding plaintiff and one of her witnesses to be credible, and in interpreting the ambiguity in the lease in favor of plaintiff. Alternatively, | ^defendants argue that even if Avis could terminate the lease at will, a forfeiture provision in the lease entitles them to retain her deposit.
Interpretation of a contract is the determination of the common intent of the parties. La.C.C. art. 2045. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent. La.C.C. art. 2046.
Defendants argue that the terms of the lease are clear and explicit, and that no further interpretation is necessary to ascertain the parties’ intent as to line 139. We disagree. The typewritten provision at line 139 could reasonably be interpreted in the manner advocated by either party, and it is therefore inherently ambiguous. Moreover, the intent behind line 139 is not clarified by the standard form provisions of the lease. Under the circumstances, it is impossible to determine the intent of line 139 from the terms of the lease itself.
In Liljeberg Enterprises, Inc. v. Lifemark Hospitals of Louisiana, Inc., 620 So.2d 1331 (La.App. 4th Cir.1993), writ den. 621 *1093 So.2d 818 (La.1993), this court recently stated:
Although parol evidence is inadmissible to vary terms of a written contract, when the terms of a written contract are susceptible to more than one interpretation, or there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed, parol evidence is admissible to clarify the ambiguity and to show the intent of the parties.
Id. at 1336. In arguing that parol evidence was inadmissible to interpret Avis’s lease, defendants rely on their assertion that the lease was not ambiguous. Because we find the lease ambiguous, we conclude that the trial court did not err in admitting parol evidence to clarify the ambiguity and determine the intent of the parties.
^Having concluded that parol evidence was admissible, we must consider defendants’ argument that the trial court erred in evaluating the credibility of the witnesses. In Rosell v. ESCO, 549 So.2d 840, 844-845 (La.1989), the Louisiana Supreme Court set forth the following standard for appellate review of findings based on credibility determinations:
When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact’s findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. * * * Where documents or objective evidence so contradict the witness’s story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness’s story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination.
* * ⅜ But where such factors are not present, and a factfinder’s finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.
Id. at 844-845 (citations omitted).
Defendants argue that the testimony of Avis and Thibodaux was so inconsistent, contradictory, and incredible that it should be rejected in toto. While the testimony of Avis and Thibodaux was inconsistent as to certain details, it was consistent as to the substance of Avis’s material allegations. Their testimony was not so internally inconsistent or implausible on its face as to cause us to discard their testimony altogether.
Taken as a whole, the testimony provides ample basis for respecting the trial court’s great discretion in crediting Avis’s testimony over that of defendants. For example, Peterson’s assertion that he did not receive Avis’s notice of cancellation was called into question by Avis and Thibodaux’s uncontra-dicted Igtestimony that defendants showed, rented, and painted the apartment during Avis’s tenancy. Defendants’ testimony that line 139 was not intended to be a cancellation clause was called into question by 'uncontro-verted expert testimony as to the customary usage of the phrase. Defendants’ testimony as to the meaning of line 139 was also called into question by their conduct in showing, renting, and painting the premises during Avis’s occupancy, thereby evidencing an intent that line 139 was a cancellation clause. See La.C.C. art. 2053.[1] And Thibodaux’s un-contradicted testimony that he placed his job on the fine in support of Avis’s version of the events was a factor which the court might reasonably have considered to weigh in favor of his credibility.
In a case such as this, where the testimony is directly contradictory, only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. Rosell. Under the circumstances, the trial court was neither manifestly erroneous nor clearly wrong in crediting the testimony of Avis over that of defendants.
*1094 In the alternative, defendants argue that even if line 139 entitled Avis to terminate the lease at will, the forfeiture provision of the lease nonetheless allows them to retain her security deposit. The forfeiture provision, which appeared as a standard form provision at lines 48-52, provided:
Notwithstanding any other provisions expressed or implied herein, it is specifically understood and agreed that the entire security deposit aforesaid shall be automatically forfeited as liquidated damages should lessee vacate or abandon the premises before the expiration of this lease, except where such abandonment occurs during the last month of the term of the lease, lessee has paid all rent covering the entire term andjgeither party has given the other timely written notice that this lease will not be renewed under its automatic renewal provisions, (italics original)
To the extent this standard form provision is at odds with line 139, the provision must be construed against defendants, the party which furnished its text. La.C.C. art. 2056.[2] Moreover, Avis paid rent through the end of her term, which was shortened in accordance with line 139, and it is therefore arguable that she did not technically violate the forfeiture provision. Having received their apartment in good condition, with all rent paid, defendants are not entitled to retain Avis’s security deposit.
Finally, defendants argue that the attorney’s fees provision of the lease entitles them to recover attorney’s fees and court costs for defending against Avis’ suit. We disagree. Having failed to prevail on the merits of this case, defendants cannot avail themselves of the attorney’s fees provision.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.

. La.C.C. art. 2053 provides: “A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties.”

. La.C.C. art. 2056 provides, in part: "A contract executed in a standard form of one party must be interpreted, in case of doubt, in favor of the other party."