liPETERS, Judge.
The plaintiff, Scott Douglas, brought this action to recover damages for injuries sustained in a boating accident which occurred in Grant Parish, Louisiana, on June 20, 1991. Douglas named as defendant Mercury Marine, the manufacturer of the outboard motor involved in the accident. After trial on the merits, the trial court rendered judgment finding that Mercury Marine was sixty percent at fault in causing the accident and that Douglas was forty percent at fault. Douglas was awarded general and special damages of $66,891.78, subject to reduction for his percentage of fault. Mercury Marine has appealed.
^DISCUSSION OF THE RECORD
The accident giving rise to this litigation occurred in the afternoon hours of June 20, 1991, on Iatt Lake in Grant Parish, Louisiana. On that .day, Scott Douglas and his friend, Paul D. Smith, had begun fishing on Iatt Lake at approximately 9:00 a.m. The two men were occupying a fourteen-foot Du-racraft boat powered by a twenty-horsepower outboard motor manufactured by Mercury Marine. Both the boat and the outboard motor were owned by Douglas. At approximately noon, the two men returned to the boat landing to pick up Edward Duffey, who had made arrangements to join them for the afternoon. The three men then returned to fishing the lake for the afternoon. During this time, the outboard motor cranked and ran without any apparent difficulty.
*575 After the three men had fished at one spot for awhile, they decided to move to another. When Douglas pulled on the starter rope to engage the motor, the motor failed to start and the starter rope failed to rewind into the motor so it could be pulled again. Douglas then removed the cowling, which covered the head of the motor, thereby exposing the flywheel. He then took a rope that was lying in the bottom of the boat, tied a knot at the end of it, and threaded it around the exposed teeth of the flywheel. By pulling this threaded rope, Douglas was able to start the motor. However, once the motor was started, he did not replace the cowling but left the spinning flywheel exposed.
Douglas then applied full throttle to the motor to cause the boat to plane. After traveling only a short distance, the boat hit a submerged stump, causing the motor to kick up out of the water. When the motor kicked up, the spinning flywheel struck the upper part of Douglas’ left forearm.
The contact produced a crushing-type laceration to the left forearm ^approximately ten centimeters in length. Dr. John S. McCabe, an Alexandria, Louisiana physician, treated Douglas immediately after the accident at the emergency room of Rapides Regional Medical Center in Alexandria. According to Dr. McCabe, the laceration resulted in the division of the flexor sublimis muscles to the fingers, an injury to the flex- or carpi ulnaris muscle, and exposure of the ulnar nerve. Dr. McCabe performed surgery to repair the muscle and skin damage and applied a splint. Douglas was discharged from the hospital on June 26, 1991.
According to Dr. McCabe, Douglas was suffering minimal pain when he was discharged from the hospital. He saw Douglas three times in the next month strictly as follow-up visits to check for infection and to remove the sutures. However, on September 18, 1992, Douglas returned complaining of a deformity at the repair site and some discomfort. Dr. McCabe found these complaints were not unusual, and his examination revealed no lack of motion or strength in Douglas’ arm.
At the time of trial in May, 1995, Douglas was twenty-nine years old. After graduating from high school, he attended Louisiana Tech University for one year and Louisiana State University at Alexandria for one semester. He then enlisted in the United States Air Force and served on active duty for approximately five years. While in the Air Force, he received extensive training which qualified him to work on diesel and gasoline engines, air conditioners, heaters, hydraulic equipment, and various aspects of airplane maintenance. After leaving the Air Force, he began working for Orkin Pest Control and was employed with that company when the accident occurred.
The outboard motor involved in the accident was manufactured by Mercury Marine sometime prior to May 1, 1965. Douglas purchased the used outboard motor from a pawn shop for $250.00 to $300.00 sometime after he was discharged from pactive duty with the Air Force.[2] When he purchased the motor, Douglas did not receive an owner’s manual and did not attempt to obtain any operation material from any other source. Prior to his purchase, he was familiar with outboard motors, having used his father’s on many occasions.
In its reasons for judgment, the trial court concluded that the outboard motor was not unreasonably dangerous in design but that it was unreasonably dangerous because of inadequate warnings about the dangers associated with the removal of the cowling. The trial court also found that Douglas was negligent because the danger of the spinning flywheel was obvious when the cowling was not in place. The trial court apportioned sixty percent of the fault to Mercury Marine and the remaining forty percent to Douglas. Douglas was awarded $60,000.00 in general damages and $6,891.78 in medical expenses, subject to the reduction for his percentage of fault. His claim for loss of wages was de *576 nied. All costs of the litigation were assessed to Mercury Marine.
In its appeal, Mercury Marine asserts three assignments of error. It first contends that the trial court erred in finding that the outboard motor was defective because of an inadequate warning. In connection with this argument, it contends that the trial court erred in allowing the testimony of Douglas’ expert on this point, Dr. Lila Laux. Mercury Marine contends in its second assignment of error that the trial court erred in not assigning one hundred percent of the fault in causing this accident to Douglas or, in the alternative, in not assigning Douglas more than forty percent of the fault. Finally, Mercury Marine asserts that the trial court erred in awarding $66,891.78 |sin damages because this amount exceeded the stipulation of the parties that the damages did not exceed $50,-000.00.
OPINION
This case falls under the Louisiana Products Liability Act, La.R.S. 9:2800.51 et seq. Pursuant to La.R.S. 9:2800.54(A), the manufacturer of a product is liable for damage proximately caused by a characteristic of the product that renders it unreasonably dangerous, when such damage arose from a reasonably anticipated use of the product by the claimant. In this case, Douglas contended in the trial court that the Mercury Marine outboard motor was unreasonably dangerous due to defective design and inadequate warnings of the dangers associated with its use. See La.R.S. 9:2800.56-2800.57. The trial court rejected the first contention, but did find that the motor was unreasonably dangerous due to inadequate warnings. As to inadequate warnings, the trial court specifically found as follows:
There were no warnings on the Mercury engine instructing the user not to operate the engine without the cowling in place. When the engine was operated without the cowling in place, a dangerous situation was created in that the moving flywheel was exposed. There was testimony elicited from a representative of Mercury that the company did know that users might remove the cowling and operate the engine, even though that was not the manner in which the engine was designed to be operated.
Due to the fact that Mercury Marine did not provide an adequate warning against the dangers of operating the engine with the cowling removed, the court finds that this product is unreasonably dangerous and Mercury Marine is liable to Scott Douglas for the injuries that he suffered.
Additionally, in apportioning fault, the trial court made the following findings:
Scott Douglas did have an awareness of the danger related to his conduct. In spite of the fact that the manufacturer did not provide an adequate warning on the engine, the danger of the spinning flywheel was an obvious one when the cowling was not in place. There was some degree of risk created by Scott Douglas’s conduct, but not the entire risk that was involved. In considering the capacities of Scott Douglas, the court finds that he had normal capacities, neither superior nor inferior. | gThere were no extenuating circumstances involved that would have necessitated Scott Douglas to proceed in haste without proper thought. An emergency situation did not exist at the time Scott Douglas started the engine, [sic] he was simply attempting to start his boat after, a part of the engine became inoperable.
La.R.S. 9:2800.57 of the Louisiana Products Liability Act directly addresses the question of what constitutes an inadequate warning. That statute reads as follows:
A. A product is unreasonably dangerous because an adequate warning about the product has not been provided if, at the time the product left its manufacturer’s control, the product possessed a characteristic that may cause damage and the manufacturer failed to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product.
B. A manufacturer is not required to provide an adequate warning about his product when:
*577 (1) The product is not dangerous to an extent beyond that which would be contemplated by the ordinary user or handler of the product, with the ordinary knowledge common to the community as to the product’s characteristics; or
(2) The user or handler of the product already knows or reasonably should be expected to know of the characteristic of the product that may cause damage and the danger of such characteristic.
C. A manufacturer of a product who, after the product has left his control, acquires knowledge of a characteristic of the product that may cause damage and the danger of such characteristic, or who would have acquired such knowledge had he acted as a reasonably prudent manufacturer, is hable for damage caused by his subsequent failure to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product.
Thus, even if the product has an unreasonably dangerous aspect associated with its operation, under La.R.S. 9:2800.57(B), no adequate warning is required if the danger of the product is obvious to an ordinary user or if the user knows or reasonably should be expected to know of the characteristic of the product that may cause damage and the danger of such characteristic.
Mercury Marine asserts that Douglas was a sophisticated user who possessed special knowledge about the product and that as such, it had no duty to warn him of that which he reasonably should be expected to know. Additionally, Mercury Marine ^asserts that, even assuming that Douglas was not a sophisticated user, the danger complained about in this case was obvious to an ordinary user and no warnings were required.
We are mindful that an appellate court may not set aside a trial court’s finding of fact in the absence of manifest error. See Rosell v. ESCO, 549 So.2d 840 (La.1989). Additionally, where there are two permissible views of the evidence, the trier of fact’s choice between them cannot be manifestly erroneous. Id. However, in this case, there are not two permissible views of the evidence, and we find that the trial court committed manifest error in its decision.
In support of his claim, Douglas offered the testimony of Dr. Lila Laux, an expert in psychology. Dr. Laux’s undergraduate training was in English and Biology. She has a masters degree in Applied Psychology and a doctorate in Industrial Organizational Psychology. Her professional experience includes advising manufacturers of products in the human aspects of the operation of their products and designing warnings and instructions to be distributed to the consumer. However, she has no engineering training, nor has she ever been involved in the technical design of products.
Mercury Marine objected to Dr. Laux’s testimony concerning whether Mercury Marine should have designed a guard to protect the consumer from the type of accident sued upon. Mercury Marine contends that Dr. Laux has no engineering expertise upon which to base such an opinion. We agree. However, we find the admission of this testimony was harmless error as the trial court concluded that the outboard motor was not unusually dangerous due to defective design, and this finding has not been appealed.
Dr. Laux was also of the opinion that warnings concerning the danger of Isoperating the outboard motor with the cowling removed should have been placed on the top of the cowling, and this is apparently the basis of the trial court’s decision. However, she acknowledged that she had never seen the outboard motor in question, that she knew nothing about outboard motors in general, and that she had done no research on the likelihood of such an accident with or without her suggested warning. In fact, Dr. Laux testified that without testing, she could not state that the warning would have been effective in preventing this accident. Rather, the best she could offer was that the warning might simply have reminded Douglas to be more careful. She acknowledged that, based upon the information received through her involvement in this case, the flywheel teeth were obvious to Douglas or any other ordinary user.
Mercury Marine presented the testimony of Dr. Richard F. Rrenek, an industrial engineer and an expert in engineering, design, and human factors engineering, and the testi *578 mony of Richard H. Snyder, a Mercury Marine employee who was accepted by the trial court as an expert in boating safety and engineering, in the design of engines, and in hydrodynamics. It was the opinion of both of these experts that the hazardous condition guarded by the cowling was the spinning flywheel and that when the cowling was removed, the spinning flywheel was an open and obvious danger to the user, sophisticated or unsophisticated. In their opinion, any warning past that point would be of no assistance to the user.
Indeed, the trial court specifically found that Douglas had an awareness of the danger related to his conduct and that the danger of the spinning flywheel was an obvious one when the cowling was not in place. Additionally, Douglas had received extensive training as a mechanic while in the Air Force. He had previously worked on the outboard motor and was familiar with its internal operation with the cowling removed. At trial he acknowledged that he was the one who removed the cowling and 19started the motor by engaging the flywheel; that he was aware of the obvious danger presented by the spinning flywheel; that he choose to operate the motor without replacing the cowling; and that he was aware that the motor had a kick-up feature that would allow the motor to kick up upon striking a submerged object. It is difficult to envision what warning could have been applied to prevent this accident short of welding the cowling shut. Thus, the evidence reveals that not only was Douglas aware of the danger such that a warning was not required, but also that even if a warning had been given, he would not have heeded it.
Accordingly, we reverse the trial court’s judgment, finding that the trial court was clearly wrong in finding Mercury Marine liable.
DISPOSITION
For the foregoing reasons, we reverse the judgment of the trial court and assess costs to Scott Douglas.
REVERSED.

. We do not find a date of purchase in the record. However, Douglas testified that he had used the motor extensively during duck season as well as to fish. Since the accident occurred long after duck season had closed, it is clear that the motor had been in his possession for a significant period of time.