DAVID S. GORBATY, Judge Ad Hoe.
| aPaul Celestine appeals a judgment rendered against him in favor of defendants, Sheriff Paul R. Smith, in his official capacity as sheriff of Pointe Coupee Parish, and Deputy Ronald Pourciau.[1] For the following reasons, we affirm.
FACTS AND PROCEDURAL HISTORY:
Paul Celestine was arrested by Deputy Ronald Pourciau in the early morning hours of August 26, 2001, for improper lane usage and speeding. He was handcuffed and placed in the rear passenger seat of Deputy Pourciau’s vehicle for transportation to the station. Upon arriving at the station, Deputy Pourciau ordered Mr. Celestine to exit the vehicle, but Mr. Celestine allegedly could not because his legs and feet were caught under the front seat of the vehicle. Deputy Pourciau then allegedly grabbed Mr. Celestine’s legs and turned him so that he could alight from the vehicle, rather than moving the front seat forward. Mr. Celestine claimed that the movement of his legs caused him to injure his back. Despite allegedly reporting his pain to several persons, including Deputy Pourciau, no medical attention was rendered while he was being detained.
Mr. Celestine filed suit against defendants claiming that his alleged injuries were caused by the negligence of the sheriffs department, specifically, the negligence of Deputy Pourciau.
Following a bench trial, the court found that Mr. Celestine had not proven negligence, and that it believed the testimony of Deputy | oPourciau over that of Mr. Celes-tine as to the events of the evening of August 26, 2001. The court dismissed the suit as to Sheriff Smith and Deputy Pour-ciau, with prejudice, and this appeal followed.
DISCUSSION:
The appropriate standard of review for this matter is the manifest error standard. *626 This case is based entirely on the credibility of witnesses and their versions of the events of August 26, 2001. See Bonin v. Ferrellgas, Inc., 03-3024, p. 6-7 (La.7/2/04), 877 So.2d 89, 94-95; Rosell v. ESCO, 549 So.2d 840, 845 (La.1989).
Assignments of Error Nos. 1 and 2:
Mr. Celestine argues that the trial court erred in finding that Deputy Pourciau’s actions in assisting Mr. Celestine did not constitute negligence. He contends that Deputy Pourciau simply could have moved the front seat forward thereby freeing his legs, without having to grab them. Further, the trial court should have determined that it was negligence for Mr. Cel-estine to be left in a cell for over 16 hours without medical help.
Deputy Pourciau testified that he did not touch Mr. Celestine’s legs at any point; rather, when asked to exit the vehicle, Mr. Celestine leaned over onto his left side and freed his own feet from underneath the cage. Once out, he fell slightly into Deputy Pourciau in a non-aggressive manner. As the two approached the outer door of the detention center, Mr. Celestine stumbled again. Deputy Pourciau then placed his right hand on Mr. Celestine’s left shoulder to help escort him.
| ¿Deputy Pourciau also testified that moving the front seat forward would not have afforded Mr. Celestine any more legroom because the cage was bolted to the floor, not the front seat. A photograph submitted into evidence corroborates this testimony.
In his brief, Mr. Celestine attempts to characterize the other witnesses’ testimony as contradictory to that of Deputy Pour-ciau. However, after reading the testimony of the three detention center employees, we find that the trial court did not err in its decision to credit their testimony.
Corporal Estelle Moore testified that she observed Mr. Celestine’s arrival at the detention center via a surveillance camera. She did testify that Deputy Pourciau “helped” Mr. Celestine exit the police unit, but then explained that Deputy Pourciau opened the passenger side door, Mr. Cel-estine got out, staggered, and Deputy Pourciau caught him. She did not at any time testify that Deputy Pourciau touched, pulled or grabbed Mr. Celestine’s legs in an attempt to get him out of the police vehicle.
Michael Donovan was a shift leader at the detention center at the time of this incident. In a written statement given shortly after the incident, Mr. Donovan noted that “[w]hen we were asking questions, [Mr. Celestine] advised that the officer that brought him in had hurt his back when he pushed his legs in the car.” Mr. Donovan testified that he attempted to gather information following the incident while Mr. Celestine was still in a holding cell, including a medical screen before Mr. Celestine could be booked. However, for most of the following 15day, Mr. Celestine would not answer any questions, and was indeed sleeping each time Mr. Donovan approached him. It was not until approximately 7 p.m. that Mr. Celestine began to cooperate. This was shortly before Mr. Celestine was released from the detention center.
Sergeant Brent Plauche testified that he also witnessed Mr. Celestine’s exit from the police vehicle via a surveillance monitor. When he first observed Mr. Cel-estine, his feet were already out of the vehicle and Mr. Celestine appeared to be laying down in the back seat. He then “wiggled through the end, put his feet down, and then pulled himself up.” Sergeant Plauche corroborated Corporal Moore’s testimony that Mr. Celestine then staggered towards Deputy Pourciau. *627 Deputy Pourciau held him up, backed away slightly, and closed the door. As the two approached the door of the detention center, Sergeant Plauche again saw Mr. Celestine fall towards a wall, and Deputy Pourciau catch him to keep him from falling down. Once inside, Deputy Pourciau reported that Mr. Celestine was uncooperative, and refused to give any information to complete the paperwork associated with the arrest. Sergeant Plauche took charge of Mr. Celestine, and placed him in a holding cell. He testified that Mr. Celestine smelled of alcohol and staggered several times on the way to the holding cell. Shortly thereafter, Sergeant Plauche accompanied Deputy Pourciau to the holding cell to give Mr. Celestine the required paperwork associated with a driving while intoxicated arrest; they found Mr. Celestine sleeping in the cell.
|ROn cross-examination, defense counsel entered into evidence a page of a written statement that Sergeant Plauche had made, in which it was noted that Deputy Pourciau had “helped” Mr. Celestine from the vehicle. However, as noted above, Sergeant Plauche had already fully explained on direct examination what he meant by “helped.” Helping Mr. Celestine from the vehicle did not include touching, grabbing or pulling his legs from the vehicle; rather, it meant preventing Mr. Celes-tine from falling each time he staggered. Sergeant Plauche further read from his statement that Mr. Celestine told him his back was hurting and that he wanted to file a complaint. After reminding Mr. Cel-estine that he was the same officer Mr. Celestine had refused to talk to earlier, Mr. Celestine was told that he could contact Captain Robert Harris later that morning to file a complaint.
Based on the above, we find no error in the trial court’s finding that Deputy Pour-ciau’s version of the events of that night was a more credible account, particularly in light of the corroborating evidence by the other detention center employees. No one testified that Deputy Pourciau touched Mr. Celestine in any way as he exited the vehicle that would have caused Mr. Celes-tine to injure his back. The testimony did bolster Deputy Pourciau’s testimony that Mr. Celestine was intoxicated, and was having difficulty walking from the vehicle to the detention center.
Also, as noted in appellees’ brief, trial counsel for Mr. Celestine specifically removed from the court’s consideration the issue ofl7whether it was negligent for Deputy Pourciau to not move the front seat forward thereby giving Mr. Celestine more legroom. The record indicates that defense counsel stated in his closing argument, “I did have a second claim today, a theory that the seat could have been moved forward. But after some really good questions today by defense counsel, that’s not a claim we have.” The trial court, therefore, did not consider this as an element of the negligence claim. We find no error in its doing so.
Assignment of Error No. 3:
In the final assignment of error, Mr. Celestine argues that the trial court erred in considering whether Deputy Pourciau’s actions were malicious. He avers that the medical evidence clearly supports that Deputy Pourciau’s actions in removing him from the police vehicle were the cause in fact of his back injury.
The medical evidence of the cause in fact of the injury is based solely on Mr. Celes-tine’s version of the events as he related them to his doctors. The trial testimony, however, does not support Mr. Celestine’s version of the events. The medical evidence thus does not prove how Mr. Celes-tine injured his back, but merely that his back was somehow injured.
*628 Further, upon reading the trial court’s reasons for judgment, we do not find that the trial court was considering malice as a consideration for its finding of no negligence on the part of Deputy Pourciau. The trial court merely pointed out that Deputy Pourciau knew based on prior incidents that there was limited space in the rear |sseat of his vehicle, and considered Mr. Celestine’s height when he handcuffed him in the front of his body. The trial court placed on the record the standards for a finding of negligence, clearly demonstrating that it was aware of those standards, and then made a finding based on the facts that Deputy Pourciau was not negligent in his handling of Mr. Celestine.
CONCLUSION:
Accordingly, we find no manifest error in the factual findings or the judgment of the trial court.
AFFIRMED.

. The Pointe Coupee Sheriff's Office was voluntarily dismissed, with prejudice, prior to trial.