STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2024 CA 0207

MIKAIL SMITH, KAREN SMITH, AND
MIKAIL SMITH AND KAREN SMITH ON BEHALF OF
THE MINOR CHILD, EMMAIRE SMITH

VERSUS

UNITED SERVICES AUTOMOBILE ASSOCIATION, ET AL.

Judgment Rendered: SEP 2 6 2024

* * * * *

On Appeal from the
21st Judicial District Court
Parish of Tangipahoa, State of Louisiana
Trial Court No. 2021-2911

The Honorable Brian K. Abels, Judge Presiding

* * * * *

| | |
|---|---|
| Erik M. Tadda<br>Jeremy S. Hader<br>Sarah D. Tormey<br>Erik M. Tadda, Jr.<br>Baton Rouge, Louisiana | Attorneys for Plaintiff-Appellant,<br>Mikail Smith |
| Valerie Briggs Bargas<br>Gregory Kent Moroux, Jr.<br>Sallie C. Dupont<br>Kolby P. Marchand<br>Mahalie LeFranc Kyzar<br>Brittney M. Reed<br>Baton Rouge, Louisiana | Attorneys for Defendants-Appellees,<br>United Services Automobile Association<br>and Courtney Lomheim |

* * * * *

BEFORE: WOLFE, MILLER, AND GREENE, JJ.

**WOLFE, J.**

In this personal injury lawsuit, plaintiff, Mikail Smith, challenges a jury verdict awarding him damages in the total amount of $131,000.00 for injuries he sustained in an automobile accident. Mr. Smith asserts that the damages he was awarded were abusively low. After review, we find no abuse of discretion in the jury's award and we affirm the trial court's judgment rendered in accordance with the jury verdict.

## BACKGROUND

On July 13, 2021, Mr. Smith filed a petition for damages naming Courtney Lomheim[1] and her automobile liability insurer, United Services Automobile Association (USAA), as defendants.[2] Mr. Smith alleged that while operating his vehicle in Hammond, Louisiana, on July 20, 2020, he was rear-ended by Ms. Lomheim and that Ms. Lomheim was liable to him for his injuries and damages. USAA and Ms. Lomheim subsequently stipulated to 100% liability for the accident, while reserving all defenses as to causation and injuries. On August 22 and 23, 2023, a jury trial was held on the issues of medical causation and damages.

At trial, the jury heard conflicting testimony. Mr. Smith stated that on the day of the accident he was taking his girlfriend and their newborn baby to a doctor appointment. While he was stopped at a red light in his Ford F-150 truck, he saw a Nissan Pathfinder in his rearview mirror as it approached and suddenly hit his truck's trailer tow hitch "hard" from behind. Ms. Lomheim testified, on the other hand, that the impact was only a "bump." Both drivers drove away from the accident scene.

---

[1] "Lomheim" is misspelled in the petition as "Lombeim."

[2] The petition was originally filed in the Nineteenth Judicial District Court in East Baton Rouge Parish; however, the case was transferred by order dated September 22, 2021, to the Twenty-First Judicial District Court in Tangipahoa Parish. Karen Smith and the Smiths' infant daughter, Emmaire Smith, were passengers in Mr. Smith's vehicle at the time of the accident and were named as plaintiffs in the petition. The Smiths eventually dismissed all claims on behalf of Ms. Smith and the minor child, as well as all claims against defendant, Progressive Paloverde Insurance Company, which was Mr. Smith's underinsured/uninsured motorist insurer.

Mr. Smith stated that he did not feel pain on the day of the accident, but a couple of days later he had a stiff neck and back. He did not receive medical treatment until one month after the accident, when he went to see a chiropractor, Dr. Derek Bruner. Mr. Smith said that the chiropractic treatments helped relieve his pain, but the pain never completely went away. On cross-examination, Mr. Smith acknowledged that he did not mention any low back pain to Dr. Bruner until one year after the accident. He also admitted that he had testified in a pretrial deposition that the chiropractic treatments did not help his pain.

In September 2020, Dr. Bruner ordered an MRI of Mr. Smith's neck and referred him to a pain specialist, Dr. Jonathan Thompson. When he saw Dr. Thompson in October 2020, Mr. Smith's main complaint was neck pain. Mr. Smith stated that he had low back pain as well, but he did not know if it was actually related to the accident so he did not mention the back pain to Dr. Thompson. Dr. Thompson prescribed pain medicine and recommended a medial branch nerve block for Mr. Smith's neck pain. Mr. Smith reported pain relief for a couple of days after the nerve block. Dr. Thompson then recommended an ablation (burn) rhizotomy of the nerve, and Mr. Smith reported more pain relief to Dr. Thompson after that procedure. However, on cross-examination, Mr. Smith admitted that he testified in his pretrial deposition that he did not experience any pain relief from Dr. Thompson's procedures on his neck.

When Mr. Smith followed up with Dr. Thompson in March 2021, his neck was feeling better but his low back was hurting. After an MRI of Mr. Smith's low back, Dr. Thompson recommended the same two procedures – a nerve block and nerve burn – for Mr. Smith's back pain, as well as an epidural steroid injection (ESI). Dr. Thompson repeated the nerve block and nerve burn in Mr. Smith's neck in May 2022 after a flare-up of pain. Mr. Smith testified that his last appointment with Dr. Thompson was in August 2022, because he moved to Ohio. At the time of trial in

August 2023, it had been one year since Mr. Smith had sought any treatment for his neck and back pain despite testifying that he was never free of pain. Mr. Smith stated that he did not have medical insurance in Ohio, so it was a long wait to see a doctor. He also testified that his injuries from the accident had affected him physically and emotionally, and whatever he did, from yardwork to playing with his children, it would cause him pain afterward.

Dr. Bruner testified as an expert in chiropractic medicine. He first saw Mr. Smith one month after the accident, on August 20, 2020. Mr. Smith reported severe neck and mid-back pain, along with reduced range of motion and muscle spasms in his neck. Dr. Bruner diagnosed Mr. Smith with a whiplash-type injury or a sprain of ligaments and muscles in his cervical and thoracic spine. The initial treatment plan consisted of conservative treatment twice a week, but Dr. Bruner ordered an MRI because Mr. Smith was experiencing radicular numbness and tingling in his arm. The MRI revealed a cervical disc herniation at the C5-C6 level, with an annular fissure. The MRI results led Dr. Bruner to refer Mr. Smith to Dr. Thompson for pain management, because chiropractic treatment had stalled. Mr. Smith told Dr. Bruner that he found it difficult to work and provide for his family and that he was just a "shell of a man."

Dr. Thompson testified as an expert in the field of interventional pain management. He first saw Mr. Smith in October 2020 for treatment of radiating pain and muscle spasms due to a cervical disc herniation after a car accident. Dr. Thompson related the injury to the accident because Mr. Smith reported that he had experienced no neck pain or arm numbness before the accident. Dr. Thompson prescribed pain medicine and muscle relaxers, and performed a cervical nerve block which Mr. Smith reported as giving him 60% pain relief. Because of that positive result, Dr. Thompson performed a nerve ablation/burn to give even more pain relief

4

for up to one year. After the good result for Mr. Smith's neck pain, Mr. Smith reported increased back pain to Dr. Thompson.

Almost one year after the accident, in March 2021, Dr. Thompson ordered an MRI of Mr. Smith's back, which revealed disc herniations and inflammation. As a result, Dr. Thompson performed the nerve block and nerve burn procedures for Mr. Smith's low back as well. Because Mr. Smith was experiencing radicular pain in his legs, Dr. Thompson also performed an ESI and referred Mr. Smith to a neurosurgeon for possible surgery to relieve the residual low back pain Mr. Smith was experiencing due to pinched nerves. Mr. Smith reported 80% relief from his leg pain after the ESI. The record does not reflect whether Mr. Smith followed up with the referral to a neurosurgeon.

In May 2022, the nerve block and nerve burn procedures were repeated for Mr. Smith's recurring neck pain. Mr. Smith reported 50% improvement. Dr. Thompson saw Mr. Smith for the last time in August 2022, right before Mr. Smith moved to Ohio. Dr. Thompson related all of Mr. Smith's treatment to the accident and stated that the treatment was medically necessary. Dr. Thompson testified that Mr. Smith conservatively would need the nerve block and nerve burn procedures on his neck and low back approximately once a year for up to ten years. Dr. Thompson estimated that the physician fee alone for the procedure would cost more than $5,000.00 each. However, on cross-examination, Dr. Thompson admitted that his treatment plan relied on Mr. Smith's reporting of the accident and pain, as well as Mr. Smith's accurate reporting of pain relief after procedures. Dr. Thompson stated that Mr. Smith's deposition testimony on the lack of pain relief after nerve block and nerve burn procedures was inconsistent with what Mr. Smith had reported to him after the procedures.

Based on the evidence and after deliberation, the jury returned a verdict in Mr. Smith's favor finding that Mr. Smith had suffered injuries as a result of the accident and awarding him damages in the total amount of $131,000.00 as follows:

| | |
|---|---|
| Past Physical Pain and Suffering | $20,000.00 |
| Future Physical Pain and Suffering | $0 |
| Past Mental Pain and Suffering | $20,000.00 |
| Future Mental Pain and Suffering | $0 |
| Past Medical Expenses | $71,000.00 |
| Future Medical Expenses | $0 |
| Past Loss of Enjoyment of Life | $20,000.00 |
| Future Loss of Enjoyment of Life | $0 |
| TOTAL: | $131,000.00 |

The trial court signed a judgment conforming to the jury's verdict on November 3, 2023. Mr. Smith appeals, contending that the jury abused its discretion in declining to award future medical expenses and future general damages. Mr. Smith further contends that the jury's award for past general damages totaling $60,000.00 was abusively low considering the nature and extent of his injuries and treatment, and when compared with awards for similar injuries in other cases.

## LAW AND ANALYSIS

All of Mr. Smith's assignments of error relate to the jury's award of damages. A factfinder has great discretion in awarding general damages. See La. Civ. Code art. 2324.1. In accordance with well-established law, much discretion is left to the judge or jury in its assessment of quantum, both general and special damages. **Christy v. Atlantic Specialty Ins. Co.**, 2021-0942 (La. App. 1st Cir. 3/3/22), 341 So.3d 614, 618, writ denied, 2022-00799 (La. 9/20/22), 346 So.3d 803. In 2023, the Louisiana Supreme Court adopted an altered approach for reviewing a general damage award for an abuse of discretion. In **Pete v. Boland Marine and Manufacturing Company, LLC**, 2023-00170 (La. 10/20/23), 379 So.3d 636, 643, the supreme court held that "appellate courts must look at past general damage awards for similar injuries in determining whether the trier of fact 'abused its much discretion.'" Further, the supreme court stated that a review of prior awards is not

the only factor to be considered; it is a starting point, and no two cases will be identical. **Id.** The review of prior awards simply serves to illustrate and supply guidance in the determination of damages. **Id.** The adequacy or inadequacy of the award should be determined by the facts or circumstances particular to the case under consideration. **Id.** at 644.

Thus, the supreme court did not completely abandon the two-step analysis for the appellate review of a general damage award, but it did modify the analysis. **Pete,** 379 So.3d at 644. The question of whether the trier of fact abused its discretion in assessing the amount of damages remains the initial inquiry. **Id.** To aid in evaluating this issue, an appellate court is to include a consideration of prior awards to determine the highest or lowest point which is reasonably within that discretion. **Id.** Therefore, we first address whether the general damage award in this case is an abuse of discretion; and, if so, we will determine the highest or lowest amount of general damages that is reasonable under the evidence presented at trial. In each task, we must include a consideration of prior awards with some discussion of the particular injuries and their effects upon the particular injured person. See **Id.**

Mr. Smith contends that the jury's award of $60,000.00 in total general damages was too low for an individual who experienced two years of treatment for soft-tissue injuries to his neck and back, along with disc herniations. Mr. Smith also argues that the jury erred in failing to award anything for future medical expenses and future general damages when the uncontroverted evidence revealed that he would need more treatment for up to ten years. Conversely, USAA and Ms. Lomheim point out that $60,000.00 in general damages is reasonable in light of the serious credibility issues that the jury heard. For instance, Mr. Smith testified that he did not experience any relief from his medical treatments, which was not what he told his doctors. Also, the jury heard about the delayed reporting of Mr. Smith's low

back pain, which he was unsure was actually related to the accident, as well as the one-year gap in all medical treatment after moving to Ohio.

In reviewing other cases, we start with a recent case decided by this court. In **Moore v. Germania Select Ins. Co.**, 2023-0946 (La. App. 1st Cir. 5/31/24), ___ So.3d ___, ___, 2024 WL 2794330, *1, a trailer loaded with a boat struck the plaintiffs' vehicle in the next lane, drug it for a distance, and pushed it into a concrete barrier. The plaintiffs were taken by ambulance to the hospital where the passenger was diagnosed with cervical strain and a back contusion. She received medical treatment for over six years and was awarded only $16,000.00 in total damages. Medical causation was contested because the passenger had been in other accidents before and after the one at issue. There was also a 20-month gap in treatment with one, but not all, of her physicians for multiple medical complaints such as headaches, blurred vision, facial tingling and numbness, vertigo, pain in the neck, shoulders, arms, hip, and severe back pain. **Id.** at *2-3. This court affirmed the trial court's award and apparent determination that the plaintiff had presented conflicting and unclear evidence regarding the nature, extent, and cause of all of her medical conditions. **Id.** at *4-5.

Another case from this court, **McInnis v. Bonton**, 2017-0088 (La. App. 1st Cir. 9/21/17), 232 So.3d 22, involved a personal injury suit that arose out of a minor automobile accident. The plaintiff, who had a pre-existing degenerative back condition, was hit from behind and did not report being injured immediately after the accident. The next day, the plaintiff began experiencing neck, shoulder, and back pain. After two weeks, the plaintiff started treatment for an aggravation of his pre-existing back condition that had necessitated physical therapy, ESIs, and multiple back surgeries prior to the accident and several more ESIs, physical therapy and two surgical procedures on his back after the accident. The jury in that case found that the plaintiff did not sustain any damages as a result of the accident in

question. **Id.** at 24. On review, this court determined that the jury's conclusions were reasonable and well supported by the record that contained evidence of significant prior medical treatment and a very minimal collision. **Id.** at 27.

Another rear-end collision case, **Waters v. Hebert**, 2019-0435 (La. App. 1st Cir. 11/20/19), 291 So.3d 278, 281, concerned an appeal of a jury award for damages in the amount of $13,461.86 ($8,461.86 for past medical expenses and $5,000.00 in general damages for past pain and suffering). The jury declined to award the plaintiff any damages for future medical expenses, future pain and suffering, past and future loss of enjoyment of life, and mental anguish. This court affirmed the trial court's judgment in accordance with the jury verdict. The jury determined that the plaintiff was not entitled to an award for future medical expenses after hearing testimony that while plaintiff was a candidate for several treatment options, she had not followed through with recommended treatment. **Id.** at 282. Likewise, the jury heard evidence and apparently concluded that the plaintiff was not entitled to future general damages; while the plaintiff sustained some injuries and had pain immediately after the accident, her injuries did not affect her lifestyle, or by the time of trial, her injuries had either subsided or she was no longer in pain. **Id.** at 283.

In another case involving a low-impact collision where the plaintiff sustained injuries to her neck and back when she was rear-ended while stopped at a red light, the jury awarded general damages totaling $15,000.00 and future medical expenses of $35,000.00. **Jones v. Bravata**, 2018-0837 (La. App. 1st Cir. 5/9/19), 280 So.3d 226, 230, writ denied, 2019-01850 (La. 2/26/20), 294 So.3d 477. Similar to the case *sub judice*, the plaintiff did not require medical attention at the scene of the accident, but later that day and over the next few days, she began experiencing pain throughout her body, particularly in her neck, head, mid and low back, and left leg. Five days after the accident, the plaintiff saw an orthopedist who prescribed medications and physical therapy for three to four months. Over the next seven-and-a-half years, the

9

plaintiff treated with several neurosurgeons and orthopedic surgeons, receiving numerous MRIs, and five non-invasive surgical procedures on her neck and back. **Id.** at 231. This court pointed out that the jury was presented with conflicting testimony concerning the extent of the plaintiff's back and neck pain and ultimately could have made credibility determinations finding that the plaintiff exaggerated the extent and duration of her symptoms and the impact the injuries had on her life. **Id.** at 234. This court determined that the jury's conclusions were reasonable. **Id.** at 236.

In an unpublished opinion involving a rear-end collision with minor damage to the vehicles, this court affirmed a general damage award of $90,000.00 for past and future pain and suffering, mental anguish, and loss of enjoyment of life. See **Howard v. Norton**, 2019-0565 (La. App. 1st Cir. 6/12/20)(unpublished), 2020 WL 3109388, *5. The plaintiff did not experience pain immediately after the accident, but sought medical treatment for neck and back pain the next day. He was diagnosed with neck and back sprain, but a few months later, an MRI revealed a disc herniation and bulge in the plaintiff's low back. Four-and-a-half years after the accident, the plaintiff had back surgery. He had tried ESIs that only gave short periods of pain relief. The plaintiff had a seventeen-month gap after he was referred to a surgeon, during which he sporadically sought chiropractic treatment. **Id.** at *5-6. This court determined that $90,000.00 in general damages could be on the low end of the range for someone who had back surgery, but ultimately decided it was a reasonable award. **Id.** at *6.

Considering the above-cited jurisprudence, and the particular facts and circumstances of the case before us, along with the great discretion granted to the jury, we cannot say the trial court abused its discretion in awarding $60,000.00 in general damages in accordance with the jury's verdict. We are unable to find that the award is less than the reasonable awards in other cases involving similar facts

and injuries. Further, the jury and the trial court were in a superior position to observe and review the demeanor of Mr. Smith and evaluate his credibility.

As to future medical expenses, the plaintiff must prove that the expenses will be necessary and inevitable. **Tripp v. DG Louisiana, LLC**, 2023-487 (La. App. 5th Cir. 4/24/24), 386 So.3d 1197, 1212. A jury may accept or reject the opinion expressed by an expert, in whole or in part. **Id**. The proper standard for determining whether a plaintiff is entitled to future medical expenses is proof by a preponderance of the evidence that the future medical expense will be medically necessary. **Menard v. Lafayette Ins. Co.**, 2009-1869 (La. 3/16/10), 31 So.3d 996, 1006. A plaintiff shows the probability of future medical expenses with supporting medical testimony and estimations of their probable cost. **Id**. An award for future medical expenses is in great measure highly speculative and not susceptible to calculation with mathematical certainty. Such awards turn on questions of credibility and inferences, *i.e.*, whose experts and other witnesses does the jury believe? **Id**. Therefore, much discretion is accorded to the factfinder's evaluation of expert testimony. **Ory v. Smith**, 2023-0856 (La. App. 1st Cir. 8/8/24), ___ So.3d ___, ___, 2024 WL 3715396, *7.

In **Tripp**, 386 So.3d at 1211-1212, the jury heard evidence that apparently led them to believe that the plaintiff would not go forward with more back surgery in the future even though her doctor testified that it was highly likely that she would require additional medical treatment such as injections or possibly surgery over the next twenty years. Similarly, in the case before us, Mr. Smith's statements were inconsistent as to whether the nerve blocks and nerve burns actually helped his alleged pain. Dr. Thompson testified that those types of treatments provide relief for approximately six to eighteen months, and that Mr. Smith would conservatively need those types of treatments for his neck and back once a year for ten years. Given the acknowledged one-year gap in treatment, the inconsistent complaints of pain,

and reporting different versions of pain relief from the procedures, the jury was faced with conflicting evidence. Where there are two permissible views of the evidence, the jury's choice between the two cannot be clearly wrong. **Rosell v. ESCO**, 549 So.2d 840, 844 (La. 1989). Thus, we find no error in the jury's decision to not award future medical expenses in this case. Based on our review of the record, coupled with a study of prior awards in factually similar cases, we conclude that the jury did not abuse its discretion with this total damage award. We find Mr. Smith's assignments of error lack merit.

## CONCLUSION

For the outlined reasons, the trial court's judgment rendered in accordance with the jury's verdict awarding Mikail Smith a total of $131,000.00 in damages is affirmed. Costs of this appeal are assessed to plaintiff-appellant, Mikail Smith.

**AFFIRMED.**